WASHINGTON,
*July,*
1839.

ALFRED WAINWRIGHT *v.* LYMAN WEBSTER.

A. being indebted to B., paid him the amount of such indebtedness in bills of an insolvent bank. The bills were in full credit at the time and place of payment, and both parties were ignorant of such insolvency. Previous to the time of such payment, the bank had ceased to redeem its bills at its counter, and they were not circulating as a currency in the immediate vicinity of the bank, but this was unknown to the parties at the time. B. afterwards learning the facts offered to return the bills, but A. refused to receive them;—Held, that the payment, under these circumstances, was not a satisfaction of the debt.

An officer who receives a writ of attachment, for service, is not thereby constituted the agent of the plaintiff, for receiving payment on the demand.

The deposition of a witness, taken upon notice to the adverse party, is admissible in evidence, though taken more than thirty miles from the residence of the adverse party; and not filed with the clerk of the court thirty days before the time of trial, as is required in the case of *ex parte* depositions.

ASSUMPSIT, on a promissory note, with a count for money had and received.

Plea, non assumpsit. Issue to the country.

Upon the trial in the county court, the plaintiff produced and proved the execution of the note, and there rested.

The defendant introduced testimony tending to show, that the plaintiff left the note in suit for collection with an attorney, who made a writ upon it, and gave it to an officer to serve. The officer went to the defendant's house to serve the writ, on the 28th of March, 1838. The defendant being absent, his father paid the officer the amount due on the note, and the costs which had accrued, in two bank notes of the bank of Windsor. The officer took the bank notes, and agreed to pay and take up the note in suit. On the morning of the 29th of March, 1838, the officer gave the bank notes to the plaintiff's attorney, and took up the note. At that time nothing was known, at the place where the attorney and officer resided, of the failure of the bank of Windsor, except, that, at the time of the general suspension of specie payment, by all the banks, the bank of Windsor also suspended, but had all along redeemed its bills in Boston, where it kept a deposit for that purpose, and at its counter. A few days after the note was taken up, by the officer, the attorney of the plaintiff notified the officer that the said bank notes were not

good, whereupon the officer again received them, and return-
ed the note in suit to the attorney.   Some few weeks after-
wards,  the officer offered the  bank  notes to the defendant's
father, who declined receiving them.

The officer was a witness, and testified  that  he  had once
or twice  before, when  serving  writs for  the same attorney,
received the sum  demanded in the writ and paid  it  over to
the  attorney, who  received  it  without  objections, and that
the attorney made no objections in the present case,  but the
officer had  no authority for  so doing, except what was deri-
ved from such acts and acquiescence of  the attorney.

Testimony was  also  given tending to shew that the bank
of Windsor  continued  to  redeem its notes in current bank
bills at its counter, and that its bills were current in the village
of  Windsor,  until  the  morning  of  the  29th  of  March,
1838.

The plaintiff introduced  testimony, tending to prove, that
said bank ceased to redeem its notes in Boston, in any man-
ner, as early as the 26th or 27th of  March, 1838, and on the
28th of  the same March, wholly stopped payment of its notes
at its counter, in any manner whatever, and that it was noto-
rious in the village of Windsor, as early as the 28th of March,
1838, that said  bank  had failed.

The  plaintiff offered the deposition of George B. Green,
to which the defendant  objected, because  it was  taken, *ex
parte*, more than thirty miles from the  adverse party's place
of  residence, and  was  not filed  with the clerk of the court
thirty days before the  commencement of  the  term of the
court for which it was taken.

The objection was overruled, and the deposition admitted.
The magistrate who took  the  deposition  certified  that the
adverse party was notified, but did not attend.

The court below charged the jury, that there did  not ap-
pear  to be  any  satisfactory  evidence that  the  officer, who
served the  writ,  had any  authority  to settle the demand in
suit ; that in doing what he did in that respect, he appeared
to be acting as the agent of the defendant ; that the payment
could not  be  considered as  made  to  the plaintiff until the
morning of  the 29th of  March, and if,  at that time, the bank
continued  to  redeem its  bills,  at  its  counter,  in  such a man-
ner as to give  them currency in the neighborhood where the

WASHINGTON,
July
1839.
———
Wainwright
v.
Webster.

bank was situated, the plaintiff could not recover, notwithstanding the bank had ceased to redeem its bills in *Boston* before that time ; but, if the bank had wholly failed to redeem its bills, at its counter, so that the bills had ceased to have any currency in that immediate vicinity, before that time, the plaintiff would be entitled to recover, notwithstanding this was not known before the time when the bills were received by the plaintiff's attorney.

The jury returned a verdict for the plaintiff and the defendant excepted.

*Carpenter, Buck,* and *L. B. Peck,* for defendant.

1. The plaintiff cannot maintain this action, because he has once received his pay, and delivered the note to a person duly authorised to receive it.

On the day the bills were paid to the officer, or on the following day, which from the testimony is somewhat doubtful, the bank proved to be insolvent. Under these circumstances, we think if the plaintiff did not risk the solvency of the bank, he would have required an *express warranty* of the defendant. 11 Johns. R. 409.

2. The bills in controversy were paid by the defendant to the officer on the 28th, and by the officer to the plaintiff's attorney on the morning of the 29th of March, 1838. The officer had in several instances settled suits on writs, and paid the money to the attorney without any objections being made, nor were there any made in this case. The receiving of the money by the plaintiff's attorney, from the officer, was a recognition of his authority to settle the demand, and had relation back to the time of the paying of the money to the officer, by the defendant. *Maclean* v. *Dun,* 1 Moore & Payne, 761. 2 Salk. 442. 2 Ld. Raym. 930. 2 T. R. 189, n. 7 East, 164, 166. 3 P. Wms. 427. 2 Stark. R. 468. Law Summary, 141, 142. 3 Burrow, 1254.

3. The deposition of George B. Green should have been rejected on the trial of the case in the court below, it not having been taken according to the statute. Stat. 83. 1 Aikens' R. 264. 1 D. Chip. R. 106, 107.

*O. H. Smith,* for plaintiff.

There was no evidence tending to shew, that the officer was the agent of the plaintiff, but on the contrary, he appears to have acted expressly as the agent of the defendant's fath-

er.   He undertook to pay over the bills delivered to him, and take up the note.   If he had neglected to do so, an action of trover would have lain against him.   He was not in possession of the note, and even if he were the agent of the attorney, the payment was not good, as such, in this case.   Paley on Agency, 209.

The main question, however, is, whether the delivery of bills of a bank that has failed, amounts to a payment.

It has long been settled, that the bills of a solvent bank are cash, by the general consent of mankind, sanctioned by judicial decisions.   A tender of bank bills is good, unless objected to, on account of their being such.   1 Swift's Dig. 291.   1 Burr, 457.   3 T. R. 554.   But that consent and sanction have never been extended to the bills of insolvent institutions.   Indeed, it would be absurd to say that a tender of the bills of an insolvent bank, as cash, would be good, unless objected to for being *bills*.

We think that sound policy and the weight of authority is in favor of the doctrine, that the moment a bank fails to redeem its bills, and they become uncurrent at its place of doing business, they lose their quality of cash, and that the loss must fall upon those who then are the holders.   A different doctrine would open a great door for fraud.

If a creditor receive by mistake any thing in payment different from what was due, and upon the supposition that it was the thing actually due, the debtor is not discharged, and the creditor, upon offering to return that which he received, may demand that which is due by the contract.   *Markle* v. *Hatfield*, 2 Johns. R. 455, and the authorities there cited. Chit. on bills, 185, n. g.

In the case of *Lightbody* v. *Ontario Bank*, 11 Wend. R. 9, and also 13 Wend. 101, it was decided, that where bank bills are received in payment, and at the time of such payment the bank which issued the bills has in fact stopped payment, although the failure is not at the time known at the place of payment, the loss falls upon the party paying, and not upon the party receiving the bills.   The same doctrine has been recognized by a recent decision in New Hampshire.

It does not appear that the defendant's father was author-

Washington,
July,
1839.

Wainwright
v.
Webster.

WASHINGTON, ized to make payment. He was, in law, a mere stranger.
July, See Paley on agency, 191.
1839.

Wainwright
v.
Webster.

The opinion of the court was delivered by

BENNETT, J.—It is a principle of law, too well established to need authority, that where a bill of exchange, or note of a third person, is received in payment of a precedent debt, the risk of the insolvency of the maker is upon the party from whom the bill or note is received, unless there is an *express agreement* between the parties, that the risk of the paper, in this respect, is to be the receiver's, or one is to be *implied, from the facts and circumstances of the case* ; and the great question is, whether this principle is applicable to paper issued by an incorporated bank. If it is true, that upon the payment of a bank bill in satisfaction of a precedent debt, in the absence of all other facts, there is an *implied* agreement that the insolvency of the bank is at the risk of the party receiving the bill ; then it follows that the authorities applicable to bills of exchange, and promissory notes, do not apply to the case under consideration. It is true, that by common consent, bank bills have, for the purposes of business, been treated as money ; but this is a *conventional regulation*, for the convenience of business, and not a legal one. No state is authorized to coin money, or pass any law whereby any thing but gold and silver shall be made a legal tender, in payment of a debt. It was decided at the last term of this court in Rutland county, that a note payable in bank bills was not negotiable. *Ante*, 268. They cannot be recognized in the legal acceptation of the term as money, but it is wholly conventional. This conventional understanding that bank bills are to pass as money, is founded upon the solvency of the bank, and upon the supposition that the bills are equivalent in value to specie, and are, at any time, convertible into specie, at the option of the holder. Upon no other ground do bank bills, by *common consent*, pass as money ; and hence, there is an implied agreement of the parties, at the time the bills are passed, that they are equivalent to money ; and they are paid by the one party and received by the other, on that supposition ; and, unless this is the case, the one party does not pay what he supposes he pays, nor the other receive what he intends to receive.

From this principle of common consent, that bank bills should pass as money, it is the implied understanding of the parties, that the receiver should take upon himself the risk of all after failures of the bank, but this principle cannot be carried any farther than this conventional regulation extends, and that is, to treat them as money, only so long as the bank, which issues them, continues to redeem them in specie, or at least in other bills equally acceptable as specie to the bill-holder.

WASHINGTON,
July,
1839.

Wainwright
v.
Webster.

When, therefore, a bank stops payment, the bills thereof cease, by this conventional arrangement, to be the representative of money; whether the particular bill-holder is apprised of that fact, or not; and, from that time, the bills of such bank resume their legal character of promissory notes and mere securities for the payment of money. If they are afterwards passed off to a person equally ignorant of the failure of the bank, there can be no implied agreement from this conventional arrangement to treat them as money, so long as they are convertible into specie, that the receiver shall sustain the loss which had then already accrued to the bill-holder. It is difficult to see why there should be a distinction between bank bills, after they cease to be, by any conventional arrangement, the representative of money, and other promissory notes. The law is well settled in this and other states, that the payment of a debt in a forged or counterfeit bank bill, is not a satisfaction, though both parties are equally ignorant of the fact. See *Markle* v. *Hatfield*, 2 Johns. R. 458, where chancellor Kent reviews the authorities with much ability. The party paying must sustain the loss, or rather is not permitted to shift it upon the other party. The parties, in such case, act upon a mistake; the thing paid by the one, and received by the other, is not what they suppose it to be; and it would, indeed, be highly inequitable, that by this mistake the loss should be shifted from him, who had already sustained it, upon the other who was equally ignorant of the fact. In the case now before the court, there was a mutual mistake. The parties supposed the bills, when paid, were then convertible into specie, and equivalent to money; and both acted upon this supposition. Common justice then forbids that this loss, already sustained, should by this mutual mistake, be shifted from the defendant

to the plaintiff. In the state of Alabama, in the case of *Lowrey* v. *Murrill*, 2 Porter's R. 280, a different doctrine is said to be established, though I have only seen a note of the case. In the case of *Young* v. *Adams*, 6 Mass. R. 182, a different doctrine is also incidentally thrown out; but the same question has been before the supreme court, and also the court of errors in the state of New York, in the case of *Lightbody* v. *Ontario Bank*, 11 Wendell's R. 9, and 13 do. 101, where the decision was in conformity with the views of this court, and we think this the better opinion, and well sustained on principle, and calculated to do the most equal justice.

It is not the business of the officer, who receives a writ for service, to receive pay on the demand. He is only to serve the writ, and if the debtor pays the demand to the officer, he holds it as agent of the debtor, till he pays it to the creditor. The money in this case being paid to the creditor on the 29th of March, and after the bank had ceased to redeem its bills, is the same as if it had been then paid by the debtor.

The statute requires notice to be given of the taking of a deposition, to the adverse party, if living within thirty miles of the place of caption. If he lives more than thirty miles therefrom, and has notice, though the deposition might have been taken *ex parte*, still this could be no objection to its admissibility. The 3d sect. of the statute, which requires *ex parte* depositions to be filed with the clerk of the court, thirty days before the session of the court in which the trial is to be had, cannot restrain the admissibility of a deposition taken with notice, though taken in a case where the deposition might have been taken *ex parte*.

We discover no error in the proceedings of the court below, and the judgment is therefore affirmed.