Scott, J.
The allegations of this petition are, in some respects, not as definite and specific as they should be, and, perhaps upon motion, they might be required to be made more so.
But regarding the petition as formally sufficient, it shows that certain bank-notes were transferred by the defendant to the plaintiffs, in payment of a pre-existing debt; that, at the time of such payment, the bank which ^issued the notes had in fact stopped payment, although its failure was not then known at the place of payment, nor to either of the parties; and that the plaintiffs, upon learning the failure of the bank, without unreasonable delay, offered to return the notes to the defendant; and the question raised by the demurrer is, whether under these circumstances, the loss falls upon the plaintiffs or upon the defendant.
This question does not appear to have been settled by any decision of this court, or of the former Supreme Court in bank; though conflicting decisions of the question seem to have been made by that court upon the circuit. There is also a want of harmony in the decisions of the several states upon the subject.
In Pennsylvania, it has been held that such a payment is valid, *153 and that the loss must be borne by the party receiving the bills. Bayard v. Shunk, 1 Watts & Serg. 92. The same rule seems to prevail in Alabama and Tennessee (2 Porter, 280; 8 Yerger, 175), and was also approved, obiter, in Young v. Adams, 6 Mass. 182.
On the other hand, it has been held in New York, that the loss in such a case must fall on the party, making the payment. Lightbody v. The Ontario Bank, 11 Wend. 1, affirmed upon error, 13 Wend. 107. And such is the rule in Vermont, New Hampshire, Maine, and South Carolina. Wainwright v. Webster, 11 Vt. 576; Fagg v. Sawyer, 9 N. H. 365; Frontier Bank v. Morse, 22 Maine, 88; Harley v. Thornton, 2 Hill, 509.
As to the opinion of the elementary writers on this question, it is said by Mr. Chitty : “ It should seem, that if, on discounting a bill or note, the promissory note of country bankers be delivered after they have stopped payment, but unknown to the parties, the person taking the same, unless guilty of laches, might recover the amount from the discounter, because it must be implied that, at the time of the transfer, the notes were capable of being received if duly presented for payment.” Chitty on Bills, *247. And Mr. Story, after stating the very question now under consideration, says that the weight of reasoning and of authority seems to favor the doctrine that the loss must be borne by the party transferring, and not by him who receives the bills. Story on Promissory Notes, 123, sec. 119.
Such, we think, is the correct doctrine, though it must be admitted that plausible, if not forcible, reasons may be suggested against it. Bank-notes are the representative of money, and circulate as such only by the general consent and usage of the community. But this consent, and usage are based upon the convertibility of such notes into coin, at the pleasure of the holder, upon their presentation to the bank for redemption. This fact is the vital principle which sustains their character as money. So long .as they are in fact what they purport to be, payable on demand, common consent gives them the ordinary attributes of money. But upon the failure of the bank by which they were issued, when its doors are closed, and its inability to redeem its bills is openly avowed, they instantly lose the character of money, their circulation as currency ceases with the usage and consent upon which it rested, and the notes become the mere dishonored and depreciated evidences of debt. When this change in their character takes place, *154 the loss must necessarily fall upon him who is the owner of them, at the time; and this, too, whether he is aware or unaware of the fact. His ignorance of the fact can give him no right to throw the-loss, which he has already incurred, upon an innocent third party.
In the absence of any special agreement, the very offer of banknotes, as a payment in money, of a pre-existing debt, is a representation that such notes are what they purport to be, the representative of money, and that they have the quality of convertibility, upon which their currency as money depends. It is only upon this idea that they can be honestly tendered as money, and when accepted as such, under the same supposition, the mutual mistake *of facts should no more be permitted to benefit one party or prejudice the other, than if the notes had been spurious, or the payment had been made in base or adulterated coin. That money paid under a mistake of facts, may be recovered back, is a familiar principle, and the application of the same equitable rule must be permitted to correct the mutual mistake of the parties in a case like the present. Besides, a contrary doctrine would present temptations, and afford facilities for the practice of fraud and imposition. A party might fraudulently pass the paper of a broken bank, and yet it might be difficult to prove his knowledge of the previous failure. Or if his victim should succeed in passing it to one equally ignorant of the facts with himself, the last recipient would be left to bear the loss, and the fraud be crowned with success.
We think justice and sound policy require the demurrer to be overruled, which is accordingly done, and the cause remanded, with leave to answer.
Brinkerhoee, C. J., and Sutliee, Peck, and Gi-iolson, JJ., concurred. ,