LOWREY *versus* MURRELL.

Payment, in discharge of a debt, in genuine Bank Notes, if made *bona fide*, and in ignorance of the failure of the Bank, is a valid payment; though at the time, the notes might be valueless.

In error from the Circuit Court of Pike. Lowry was indebted to Murrell in the sum of one hundred dollars. In part payment of this debt, the former paid to the latter, two notes of twenty dollars each, on one of the Banks in Georgia. Murrell afterwards brought his action against Lowry before a Justice of the Peace, for the amount of the notes, and recovered judgment, on the ground, that the notes were on a Bank that had stopped payment. Lowry took the case before the Circuit Court, where a trial was had on the issues of *non-assumpsit* and *payment*. Lowry requested the Court to instruct the jury, that if they believed from the evidence that the notes were genuine, and were paid in good faith, in part satisfaction of a debt—no proof having been made that the notes had been presented to the Bank, or that any offer had been made to return them, the plaintiff could not recover : also, that the plaintiff could not recover unless he shewed a failure of the Bank before the time that the suit was commenced before the magistrate. The Court refused to give these instructions, or either of them, but instructed the jury, that the only questions were, did the defendant owe the plaintiff a debt—did he pass the notes in question in payment of it ?—if so, were these notes on a Bank which had stopped payment before they were passed? and that, in the latter event, they must find for the plaintiff. The instructions refused, and the instructions given, were assigned as erroneous by the plaintiff in error.

PECK, for Plaintiff.—The defendant in error consented to, and did receive these bills as cash—they are admitted to be genuine—they were paid by the plaintiff in error in good faith, in the ordinary course of business, without any knowledge that the Bank had ceased to redeem its bills; the defendant, therefore, must be deemed to have taken them in payment, and if so, it will be considered as payment—11 *Johns. Rep.* 409—15 *Johns. Rep.* 241—7 *Mass.* 286.

Bank notes stand upon a different footing from the notes of individuals turned over by a debtor in payment—they are treated and considered in the ordinary course and transaction of business, as money—they pass by will, as money or cash—1 *Burr.* 457—3 *Term Rep.* 454. A promissory note, payable in bank bills is a negotiable note, within the statute, which it would not be, unless bank bills were treated as money.—9 *Johns. Rep.* 120—19 *Johns. Rep.* 144—5 *Cowen*, 183.

Bank bills are considered a legal tender, unless specie is expressly demanded—solely upon the reason, that in conformity with common usage, they are regarded as cash—3 *Starkie's Ev.* 1390, *note y.*

Where a loss must fall on one or the other of two innocent parties, the defendant is to be preferred.—*Doug.* 655—1 *Bos. & Pul.* 260—1 *Mass.* 66.

There should have been an offer to return the notes; and the Judge ought so to have charged.—*Ala. Rep.* 299—1 *Stewart*, 354.

By Mr. Chief-Justice SAFFOLD :

Murrell brought his action before a Justice, to recover forty dollars of Lowry, and obtained judgment accordingly. Lowry appealed to the Circuit Court, where a trial was had on the issues of non-assumpsit and payment.

It appears by bill of exceptions, that Murrell had lent to Lowry one hundred dollars, in payment of which sum, Lowry, in part satisfaction, paid two bills on one of the Banks in Georgia, of twenty dollars each; that several months after the institution of the suit before the magistrate, the Bank appeared to have stopped payment: the particular time did not appear. There was no proof that the notes had been presented at the Bank for payment, or of notice given to Lowry, or of any offer to return them to him. The notes were admitted to be *genuine,* and it appeared in evidence they were worth about fifty cents in the dollar. There was no evidence of fraud or bad faith in the payment.

Lowry requested the Court to instruct the jury, that if they found the facts as above stated, the plaintiff was not entitled to recover: also, that unless the evidence shewed, a failure of the Bank before the issuance of the warrant, which was the commencement of the suit, the plaintiff could not recover. All which the Court refused; but charged, that the only question in the case was, did the defendant owe plaintiff a debt, and did he pass the notes in question in payment of it; if so, were these notes of a Bank which had stopped payment before they were thus passed; in the latter event, they must find for the plaintiff. The opinion of the Court, in refusing the instructions as requested, and in giving the contrary charge, being excepted to, is here assigned as *erroneous.*

In the argument of counsel, (which has been *ex parte* plaintiff) the transaction has been treated as one in which a promissory note, or bill of exchange has been passed in the purchase of an article, or in discharge of a pre-existing debt. In cases of the former description, it has been ruled that, if a vendor of

goods, receive from the purchaser the note of a third person, (such note not being forged, and there being no fraud or misrepresentation on the part of the purchaser as to the note, or the solvency of the maker,) such note will be deemed to have been accepted by the vendor in payment and satisfaction, unless the contrary be expressly proved.—(*Whitbeck* vs. *Van Ness.*[a]—*Breed* vs. *Cook & Caldwell:*[b]) also, in a case of the latter description, (*Wiseman, et al.* vs. *Lyman,*[c]) it was held, that, where the defendant received in payment of a debt due him from the plaintiff, the promissory note of a third person, payable to said defendant, such note is at the risque of the defendant, unless there be fraud, or some agreement to the contrary.

[a] 11 Johns. R. 409.
[b] 15 ib. 241.
[c] 7 Mass. Rep. 286.

There has, however, been some contrariety of decision on these points, especially in reference to *pre-existing* debts; and in such cases a material enquiry is, whether the note of the third person was taken in *absolute* payment and discharge of the prior debt; or whether it was intended only as a guarantee of the debt, or conditional payment. If it be expressed or sufficiently implied, that such note was not passed in absolute payment, or if there be fraud or misrepresentation, resort may be had to the original consideration.

Payment of a debt, in a description of money, which if offered as a tender, and not objected to because of the kind, would be good, must, it would seem, be regarded as a valid *payment.* A tender must, in legal strictness, be of specie, and not of bank notes or bills.[d] But a tender in bank notes, is now conceded to be legal and sufficient, unless it be specially objected to.—(*Wright* vs. *Reed.*[e])

[d] 3 Stark. 1390.
[e] 3 T. Rep. 554, 2 Bos. & Pul. 526--3 Starkie, 1360, note Y. idem, 1392—2 Saund. Pl. & Ev. 368.

In *Whitbeck* vs. *Van Ness* above referred to, the

Supreme Court of New York distinguishes the effect of payments in genuine, from payments in spurious bank notes : they remark, that though the payee does not assume upon himself the risque of forgery, yet if the bill be genuine, and the bank fail, the parties being equally ignorant of the fact, the payment is available. In a late case, the same Court remarks, in reference to payment in promissory notes, that the question is the same, whether the note be given for a *precedent* or *cotemporary debt*, or whether it be the note of the party, or of a third person; that in each case it is, whether it was *agreed* to be received *as payment*.—(*Porter* vs. *Talcott and Bowers.*[a]) Again, they say—the acceptance of the note of a third person, on the sale of a chattel for the consideration money, is payment.[b]

[a] 1 Cow. R. 359.

[b] 3 Cow. 272, 11 Johns. Rep. 415, note.

The case before us is conceived to involve a principle essentially different. Bank notes usually pass as current money, implying no warranty of *solvency* on the part of the payer. From the nature of the subject, and the usage of commerce, a payment so made, is a full indication of final settlement; much stronger than the passing a promissory note, bond, or bill of exchange, which custom has not sanctioned the use of, as money. Good faith is equally demanded in either case ; so that for fraud or misrepresentation respecting the quality of either kind of paper, as well as any other article, or for a false warranty respecting it, doubtless the person paying or passing it, would be legally responsible.

The idea may be plausible, that if a debtor has passed a currency in payment of his debt, which was believed at the time to have been equivalent to cash, but which in fact was worth nothing, or only half the nominal sum, the debt, in legal contempla-

tion, should remain unextinguished. Such is admitted to be the law and justice of the case, if the paper be spurious, because of the implied warranty of *genuineness* or *title;* but according to legal analogy, and the nature of commerce, it is impracticable to carry the principle farther. If an article of property be sold in good faith, without warranty, apparently of great value, when in fact it was of little or none, the vendee is without remedy; if in the same contract, and in the same good faith, *bank notes* be taken in payment, and the result should afterwards be found so far different, that the property prove sound, but the notes unavailable from the failure of the bank, the loss must, in like manner be borne by the vendor. The principle must be the same where the payment has been made of a pre-existing debt. Bank notes are usually in rapid circulation as cash, and are apt to pass through many innocent hands after the bank has stopped payment, and before notice thereof has reached the place; after which, nothing could be more embarrassing to commerce, than to upset all such transactions; nor would there be any justice in the principle: it would carry the responsibility back to the holder who first passed the note after the moment of failure, when several subsequent holders may have passed it in like manner, and without loss to themselves.

In the present case, the objection to the opinion of the circuit court, goes farther. The notes appear to have only depreciated about fifty per cent: there appears to have been no offer to return them—no diligence attempted to collect or receive the money of the Bank; yet the party thus making payment, was held responsible for the full value of the notes, when at least they appear to have been available to the amount of about

half their nominal value. But, independent of this latter objection, there is error in the record, for which, the judgment must be reversed, and the cause remanded.