# Waring *v.* Lewis *et al.*

*Bill in Equity to correct Errors in Final Settlement of Administrator, &c.*

1. *Res adjudicata applies as well in equity, as at law.* —The principle, that matters once judicially determined cannot again be called in question by parties or privies, is as binding and controlling in equity as at law.

2. *Probate court; dignity of decree of, on final settlement.*—When the jurisdiction of the probate court has attached and become complete, its decree on final settlement of an administration is of equal dignity with the judgment or decree of any other court of law or equity, and is conclusive on parties and privies, not only as to facts actually litigated and decided, but of all facts necessarily involved in the rendition of the judgment.

53  615
93   41

53  615
98  453

53  615
103  445

53  615
106  519

53  615
114  558

53  615
129  637

53  615
139  556

53  615
143  241

ₗWaring *v.* Lewis.]

3. *Same; power of court of chancery, over.* — A court of chancery can no more interfere with or annul such decree, than it can the judgment of any other court: to authorize its interposition, some special equitable circumstance must be shown, whereby the party assailing the decree, by reason of accident, fraud, or the act of his adversary, unmixed with fault or negligence on his part, was prevented from urging the matter relied on, at the time of the rendition of the judgment.

4. *Same; what not ground to reopen final settlement.*—A *devastavit* on the part of the administrator, or a fraudulent concealment of assets, cannot be made the basis of relief against the decree rendered on final settlement, when the facts were known, and could have been presented and litigated on the settlement.

5. *Same; as binding on minors as on parties sui juris.* — A decree on final settlement of an administration, rendered by the probate court after jurisdiction has attached and become complete, is as binding and conclusive upon minors represented by a guardian *ad litem*, as upon parties *sui juris*.

6. *Same: effect of final settlement as between outgoing administrator and administrator de bonis non.*—When the period for the presentment of claims has not expired, nor the time arrived when distributees are entitled to distribution, the administrator *de bonis non* is the only party entitled to call the outgoing administrator to a final settlement, and to recover from him unadministered assets, or charge him with a *devastavit.*

7. *Same.*—The decree rendered on such a settlement, in the absence of fraud or collusion between the outgoing administrator and his successor, is to be regarded as final and conclusive between the outgoing administrator and the distributees; although, as to the administrator *de bonis non*, it may be regarded as *prima facie* evidence only, in a proceeding to charge him for negligence in not obtaining a larger decree.

8. *Executor or administrator; power over choses in action of deceased.* —An executor or administrator has the full legal title to the choses in action and debts due the deceased, and may release, compound, and discharge them, as fully as if he were the absolute owner, being answerable for improvidence in the exercise of the power; and in the absence of fraud or collusion, no remedy can be pursued against those *bona fide* making satisfaction, accepting a release, or entering into the composition of a debt with him.

9. *Payment in Confederate currency; when extinguishes debt.*—Payment to an executor, administrator, or other trustee, in bank notes or other currency, which is or may be the circulating medium at the time of payment, operates an extinguishment of the ·debt, in the absence of fraudulent collusion between the debtor and the party accepting payment; and the remedy of parties interested, if the transaction is reckless or improvident, is against the administrator or trustee receiving such payment.

10. *Unauthorized loan; when administrator only party to accept payment of.*—Where the administrator loans money without authority of law, or makes other unauthorized use of it, the *cestui que trust* must elect to charge him with the fund thus used, or to accept the investment; and when the administrator is charged with, and accounts for the fund so used, it becomes his individual property, and he alone can accept satisfaction of it.

APPEAL from Chancery Court of Mobile.
Heard before Hon. ADAM C. FELDER.
The opinion states the case.

ROBERT H. SMITH and STEPHEN CROOM, for appellants. —The bond made by Roberts as administrator, with War-

[Waring *v.* Lewis.]

ing and Mrs. Moulton as the sureties, was good and valid, though taken by an officer of his illegal government then existing in Alabama. The courts then existing here are to be considered at least as foreign courts, and their judgments and decrees as those of foreign courts. *Marlin* v. *Hewitt*, 44 Ala. 418; *Bibb & Falkner* v. *Avery*, 45 Ala. 692. The sureties indeed, since they aided the administrator in invoking the action of such foreign court, whereby he obtained possession of the intestate's estate, have made themselves something more than sureties, and are chargeable as trustees *in invitum*. *Bibb & Falkner* v. *Avery*, 45 Ala. 695. Since that court has ceased to exist, no review of its proceedings, or motion to enforce its decree, can be had in the rightful court of coincident jurisdiction, though the decree is open to such attacks as may be made on any other foreign judgment. From this proposition it results, not only that a court of equity has jurisdiction, but that there is no other remedy than in a court of equity. It results, also, that complainants have only to show error to their prejudice. In fact, however, they come under the most stringent rules for the review of probate decrees. Revised Code, § 2274; 34 Ala. 198.

No citation of authority is necessary, to show that equity has jurisdiction to foreclose Waring's mortgage; nor to show that the court, having taken jurisdiction, will do complete justice, and reach the debtor surety, who is made a defendant, by compelling him first to pay his debt in full to the estate.

Roberts having died insolvent, and there being no administration on his estate, the sureties may be sued without joining the personal representative of Roberts; and this fact adds another reason why equity is not only the proper, but the only jurisdiction, which the complainants can invoke. 9 Porter, 708; 21 Ala. 433; 20 Ala. 817; 46 Ala. 59; Rev. Code, § 3322.

As one distinct ground of relief, the bill does not complain of the probate decree on the settlement with Roberts, but seeks to enforce its execution. It claims that the probate court properly rendered a decree against Roberts for nearly sixteen thousand dollars, which he never paid, but for which he obtained a receipt from his successor in the administration, by paying the greater part in Confederate treasury-notes, and the balance in notes of third persons, which were not assets of the estate, but his individual property; and that this payment was valueless to the estate. The probate decree was for "dollars," and could only be for dollars;

[Waring v. Lewis.]

that is, money, or legal tender notes. *Shackleford* v. *Cunningham*, 41 Ala. 205; *McFarland* v. *Randle*, 41 Miss. 411; *Hill* v. *Erwin*, 44 Ala. 665. The administrator had no authority to receive anything but money in payment of the decree; as against him and his sureties, the transaction was without legal sanction, and is not binding on the distributees. *Aicardi* v. *Robbins*, 41 Ala. 546; *Chapman, Lyon & Noyes* v. *Cowles*, 41 Ala. 113; *Ellis* v. *Smith*, 42 Ala. 349; *Hill* v. *Erwin*, 44 Ala. 665; *Anderson* v. *McGowan*, 45 Ala. 470; *Hall* v. *Hall*, 43 Ala. 488; *Oglesby* v. *Howard*, 43 Ala. 147; *Thompson* v. *Perryman*, 45 Ala. 621. That a court of equity is the proper forum, in which minors, or persons not parties to such decrees, who have been injured in such case, may seek their remedy, see *Mosely* v. *Tuthill*, 45 Ala. 651; *Bibb* v. *Avery*, 45 Ala. 695; *Gerald* v. *Bunkley*, 17 Ala. 176. The principle applicable to such cases, and the reasons on which it is founded, are clearly stated by Lord Cottenham, in the case of *Clough* v. *Bond*, 3 My. & Cr. 496.

Another ground of equitable relief, stated in the bill and clearly established by the evidence, is, that the probate decree does not go far enough, because it fails to charge Roberts with the special deposits in gold, amounting to eight thousand dollars. That he and his sureties are liable for his failure to account for this deposit, under the facts disclosed by the record, is a plain and unquestionable proposition of law. *Milam* v. *Ragland*, 19 Ala. 85; *Mock's Heirs* v. *Steele*, 34 Ala. 198; *Harris* v. *Parker*, 41 Ala. 622.

George N. Stewart, P. Hamilton and John A. Campbell, *contra*, submitted separate printed arguments, which were used on the hearing before the chancellor, and from which the following synopsis of their points and authorities is condensed:

1. Waring was merely a surety for Roberts, on his official bond as administrator. He had no other connection with the estate of Lewis, and did not collect or meddle with the property. His liability is that of a surety, against whom there is no equity; that is, he stands upon the terms of his contract, and his liability is *strictis simi juris*. 9 Wheaton, 680; 2 Wallace, 219, 235; 21 Howard, U. S. 76; 1 Vernon, 395.

2. The condition of the bond was, that Roberts should well and truly perform all the duties required of him by law as administrator. The law under which the appointment was made, is the law by which the duties and the liability of the administrator are to be determined. The appointment

Vol. LIII.

[Waring v. Lewis.]

was made by the probate court then exercising judicial functions in Mobile, and the law administered by that court must determine the liabilities.    An administrator derives his whole power from the authority which appoints him : his letters are the source of his power.    1 Lomax on Executors, 82, 83, 86; *Vaughn* v. *Northrup*, 15 Peters, 5–6; 14 Ala. 834.

3. The administrator did account to the court by which he was appointed.    With that court he made a final settlement of his trust, and paid over to his successor, pursuant to its decree, the balance found against him, and the unadministered assets in his hands.    The decree conforms to the requirements of the law then of force.    All the proper parties were before the court; the infants, now complainants, were represented by guardian *ad litem*, and the decree was properly rendered in favor of the administrator *de bonis non*.    Rev. Code, §§ 2233, 2137—2155, 2043; 39 Ala. 292; 19 Ala. 268; 37 Ala. 268.

4. The administrator *de bonis non*, in whose favor this decree was rendered, was the only person to whom payment could be made ; he alone had power to accept payment, and to give releases, discharges, or acquittances.    In the absence of collusion between him and the administrator in chief, his receipt is a full discharge and extinguishment of the debt. If he was guilty of a *devastavit*, or other improper conduct in relation to these matters, the distributees have their remedy against him and his sureties, with whom Waring has no connection.

5. The bill shows no ground of equitable relief, as against Waring.    The bill does not allege accident, mistake, fraud, collusion, concealment, or any other fact which will warrant the interposition of a court of equity.    In the absence of such allegations, all the matters complained of are conclusively settled by the probate decree.    *King & Ansley* v. *Smith*, 15 Ala. 268 ; *Modawell* v. *Holmes*, 40 Ala. 404 ; *Bryant* v. *Horn*, 42 Ala. 496 ; *Langdon* v. *Roane*, 6 Ala. 518 ; *Fuller* v. *Crittenden*, 6 Conn. 401; 6 Barbour, 458; 37 N. Y. 312 ; 11 Allen, Mass. 4; 3 Allen, 474 ; 23 L. & Eq. 315; 9 Hare, 141 ; 11 Georgia, 556.

BRICKELL, C. J.—The bill by appellees, who are minor children, and only next of kin of William H. Lewis, deceased, who died intestate, in June, 1861, a resident citizen of the city of Mobile.    On the 10th day of July, 1861, the court of probate of the county of Mobile appointed Joel A. Roberts administrator in chief of said intestate ; and he qualified, and gave bond, with the appellant and Joana

[*Waring v. Lewis.*]

Lewis, the widow of the intestate, as his sureties, payable and conditioned as required by law. Roberts, as administrator, became possessed of the personal assets of the intestate, consisting of moneys, choses in action, and a stock of groceries and merchandise. The moneys, or a part thereof, he loaned as follows : eight thousand dollars to appellant, on the 29th of July, 1861; and two thousand dollars to Sydney T. Douglass, on the 2d of September, 1861. These loans were payable twelve months after their respective making, and the borrowers gave notes, with mortgages on real estate, to secure their payment. On the 7th of March, 1862, Roberts resigned as administrator, his resignation was accepted, and entered of record. On the 23d of March, 1862, Dominick O'Grady was duly appointed administrator *de bonis non*, of said intestate ; accepted, qualified, and gave bond as such. On the 20th of March, 1862, Roberts filed in the court of probate his accounts and vouchers for a final settlement of his administration, accompanied by a list of the heirs and next of kin of the intestate, stating their names and ages. The court appointed April 14th, 1863, as the day for the settlement, and ordered the notice prescribed by the statute to be given. On the 15th of April, 1862, to which day the settlement was continued, the parties appeared ; Roberts, O'Grady, the administrator *de bonis non*, Mrs. Lewis, the widow, in person, and the appellees by their guardian *ad litem*, duly appointed by the court. The court, having audited and stated the accounts and vouchers, ascertained a balance to be due from him of $15,970 76 ; for which sum, a final decree was rendered against Roberts, in favor of O'Grady, the administrator *de bonis non*, and ordering a surrender to O'Grady of the unadministered assets. On the 17th of April, 1862, Roberts delivered to O'Grady the unadministered assets ; and on the 18th of April, 1862, paid him the amount for which the decree was rendered, taking separate receipts. On the 17th of April, 1865, O'Grady made a final settlement of his administration in the court of probate ; accounting for the assets he had received from Roberts, and paying to the guardian of appellees the amounts ascertained to be due them respectively. Roberts has died insolvent, and is without a personal representative.

The bill alleges, that Roberts failed to account for assets he had received, and appropriated to his own use ; and negligence in the collection of the debts due the intestate. It seeks to avoid the satisfaction of the decree rendered against Roberts, in favor of O'Grady, the administrator *de bonis non*, because the only satisfaction was with Confederate treasury-

[Waring *v.* Lewis.]

notes, and in debts due from third persons to Roberts, as administrator. It seeks to establish the debt and mortgage of appellant, because the payment of the debt was made to Roberts, after his resignation, in Confederate treasury-notes. It seeks to charge appellant, as surety of Roberts, with the debt of Douglass, because of its payment to Roberts in Confederate treasury-notes, after his resignation.

The bill seems to have been intended to present the right of the complainants to relief, in several different aspects. It has some of the elements of a bill, addressed to the general jurisdiction of a court of equity, to reopen the final settlement of an administration,had in the court of probate, because of fraud, and to surcharge and falsify the accounts of the administrator on which the settlement was based. It · has also elements of a bill to correct errors occurring in the settlement, addressed to the special jurisdiction conferred by the statute (R. C. §§ 2274–5). It may have been intended as a bill to compel payment from a debtor, who has fraudulently and collusively obtained from an administrator satisfaction of his debt, or the evidences of it, without an actual, *bona fide* payment. Or, it may have been intended to pursue trust funds, of which the appellant has possessed himself by a fraudulent collusion with the personal representative. If, in either of these aspects, the evidence would authorize relief, and the bill is now deficient in allegation, it would be capable of amendment in the court of chancery, so as to correspond with the proof. (R. C. § 3356). Having reached the conclusion, that in neither of the aspects in which the case may be considered, the evidence warrants a decree against the appellant, we do not propose a critical analysis of the bill, nor to affirm or deny that such several and distinct matters, or grounds of relief, can properly be blended in one suit.

The *devastavit* of Roberts the administrator in chief, against which relief is now sought, is supposed to consist of his fraudulent omission to account for several thousand dollars in gold, deposited with him, or with a bank of which he was an officer, by the intestate, and of money received by him after his qualification as administrator, with which he failed to charge himself; and of negligence in the collection of the debts due the intestate, from which loss ensued ; and in the loans made to appellant, and to Douglass. It cannot be doubted, that of this *devastavit*, if it was committed, the court of probate had full and complete cognizance ; and that the relief now sought could have obtained in that court, when the settlement of the administration was made, and

[Waring v. Lewis.]

the final decree pronounced. In the judicial system of this State, the court of chancery retains its original jurisdiction over the subject of administrations, the marshalling of assets, their application to the payment of debts, or to the satisfaction of legacies, and their distribution in cases of intestacy. To this jurisdiction a proper party may appeal, without assigning any special cause of interference, unless some other court, having concurrent jurisdiction, has possession of the subject. *McNeill* v. *McNeill*, 36 Ala. 115. A trust or equity not intervening, of which the court of probate has not cognizance, its jurisdiction in the settlement of the accounts of an executor or administrator, the ascertainment of the extent of his liabilities, whether these arise from assets remaining in his hands unadministered, or from his breaches of trust, the rendition and enforcement of decrees fixing such liabilities, is plenary, and concurrent with that of a court of equity. 1 Brick. Dig. 647, § 120. The jurisdiction of the court of probate attaching, and being concurrent with that of a court of equity, the principle applies, universally recognized in all cases of concurrent jurisdiction, as essential to the validity and dignity of judicial proceedings, the harmony of judicial action, and the prevention of unseemly conflicts between judicial tribunals, harassing and perplexing to the suitor—that the court which first has possession of the subject, must decide it; and having adjudicated, the adjudication is conclusive. *Moore* v. *Lesseur*, 33 Ala. 237; *King* v. *Smith*, 15 Ala. 270; *Stell* v. *Glass*, 1 Kelly, 486. The settlement made by Roberts of his administration, in the court of probate, was made after the termination of his authority as administrator, and after the qualification of his successor. The only duty remaining on Roberts was that of accounting fully for all assets received by him, and the surrender to his successor of assets in his possession unadministered. No trust or equity existing, of which the court of probate could not take full cognizance, in that court only could he seek a settlement of his administration. The settlement was necessarily, as it imports, a final, not a partial settlement. The court had not jurisdiction, and it was not invoked to exercise any other jurisdiction, than that of auditing, stating, and allowing his accounts and vouchers, embracing his entire administration, charging him with all liabilities he had incurred in the collection, preservation, and appropriation of the assets, or from a want of diligence in the discharge of his trusts; crediting him with all proper disbursements, and rendering a decree, conclusive on him and his sureties, as to the extent of his lia-

bilities. With all proper parties before it, after notice given in the made prescribed by law, the appellees represented by a guardian *ad litem* duly appointed, and who appeared, the court exercised its jurisdiction, and rendered a final decree. Of every fact now urged in impeachment of the accounts stated and allowed by the court, and of the decree rendered, the court then had full jurisdiction. All were in that court fit subjects of litigation, and are necessarily involved in the decree pronounced. They were all adjudicated, or the settlement and decree are not what they import to be, final, mode in the exercise of the jurisdiction with which the court was clothed. The judgment or decree of a court of competent jurisdiction; whether the jurisdiction is exclusive or concurrent, superior or inferior; not assailed on error or appeal to an appellate jurisdiction, is final and conclusive, not only as the facts actually litigated and decided, but of all facts necessarily involved in the judgment or decree. *Chamberlain* v. *Gaillard*, 26 Ala. 509; *McClure* v. *Miller*, 1 Bailey's Eq. 107; 2 Smith's Lead. Cases, 669 (5th ed). Unless fraud can be imputed to the administrator, who was the actor in the proceedings, of which his adversaries had not knowledge, and which they could not discover by the use of reasonable diligence; or accident or mistake has occurred, without fault on their part, preventing them from availing themselves, in the court of probate, when the decree was rendered, of the facts now relied on, to charge upon the administrator a *devastavit*, the decree must be conclusive, an adjudication that such *devastavit* was not committed, or, if committed, that it entered into, and is accounted for in the decree rendered.

Such is the force and effect of the decree, or a court of equity would assume to revise the action of the court of probate, or wholly to disregard it. A court of equity has not appellate or revisory jurisdiction over the decrees of a court of probate, or of any court of concurrent jurisdiction, or of the judgments of a court of law rendered on matters, of which the court of equity could originally have taken cognizance. "Were a court of equity," said C. J. Marshall, "in a case of concurrent jurisdiction, to try a cause already tried at law, without the addition of any equitable circumstance to give jurisdiction, it would act as an appellate court, to affirm or reverse a judgment already rendered on the same circumstances by a competent tribunal. This is not the province of a court of chancery." *Smith* v. *McIver*, 9 Wheat. 535. The conservative principle, that matters which have received a judicial determination cannot be called again into

[Waring v. Lewis.]

controversy by the same parties or their privies, is as obligatory in equity as at law. The adjudication may be founded in error, or may have wrought wrong or injustice; but some special cause for equitable interference—some cause of which the party complaining could not have had the benefit, when the judgment was rendered—must be showm, or the judgment will remain a positive bar to future litigation at law or in equity. 3 Lead. Eq. Cases, 180. The numerous adjudications on this point are marked by a harmony of opinion not always found on legal questions; and the result is thus stated by a writer of learning and discrimination: "The actual adjudication of any question is in fact final, under all circumstances, unless corrected by some appellate tribunal, and is never subject to re-examination in any other than an appellate court, upon an issue of law or of fact; nor upon the sole ground, that the former decision is contrary to equity or good conscience. It is always a condition precedent to the proper action of a court of equity, in interfering with a judgment or decree not before it upon appeal, that facts be disclosed, establishing that the matter now in the form of an adjudication is in truth, without any fault of the party seeking to avoid its effect, a determination in which he could not present his cause of action, or his ground of defense, as the case may be, to the consideration of the court." Freeman on Judgments, § 485. To this rule, this court has strictly, inflexibly, and uniformly adhered. By its judgment, a court of equity has never interfered with the judgment of a court of law, or the decree of a court of probate, nor detracted from its conclusiveness, nor reopened the litigation involved in its rendition, unless on facts or grounds of which the party complaining could not have availed himself, when the judgment or decree was rendered, because of accident, or the fraud, or act of his adversary, unmixed with fault or negligence on his part. *King* v. *Smith*, 15 Ala. 270; *Watts* v. *Gayle*, 20 Ala. 826; *Allman* v. *Owen*, 31 Ala. 167; *Moore* v. *Lesseur*, 33 Ala. 237; *Duckworth* v. *Duckworth*, 35 Ala. 70; *Otis, adm'r* v. *Dargan, ante,* 178.

The bill does not aver, and the averment could not have been made consistently with the evidence, that all the facts in reference to the *devastavit,* now imputed to Roberts, could not have been discovered by reasonable dilgence, or were in truth unknown, when the settlement was made in the court of probate. Nor is any reason or excuse averred, nor could any have been averred and proved, for not presenting then for adjudication these facts, if they were not in fact adjudicated. It is not an answer to say, that Roberts fraudulently

[Waring v. Lewis.]

concealed the fact that the gold coin, alleged to have been deposited by the intestate with him, or with the bank of which he was cashier, had been received by him, and appropriated to his own use; and also concealed his reception of the other sums of money, for which it is said he did not account. Such a concealment is odious, and would have authorized an appeal to equity, for discovery and relief, before the adjudication in the court of probate court, even after its jurisdiction had attached. Blakey v. Blakey, 9 Ala. 391 ; Hunley v. Hunley, 15 Ala. 91. But of this fraud, if perpetrated, the court of probate had cognizance, and could have redressed it on the final settlement. Fraud is certainly a general head of equity jurisdiction, and will be relieved against; but, in many instances, it lies also within the cognizance of other tribunals ; and when it arises in the proceedings had in such tribunals, and the proceedings ripen into a final judgment or decree, it is as conclusive of the question of fraud, as of any other matter involved in its rendition. 3 Lead. Eq. Cases, 185.

In the case of Smith v. McIver, supra, relief was sought against a judgment at law, not because of fraud in its rendition, but because the title on which the judgment was founded was infected by fraud. The argument addressed to the court was, that a court of equity had jurisdiction because of the fraud. In that case, as in this, the facts alleged had precisely the same operation in a court of law, as in a court of equity, and were as capable of proof in the one court as in the other. Relief was refused, the court saying: "Admitting, then, the concurrent jurisdiction of the courts of equity and law in matters of fraud, we think the cause must be decided by the tribunal which first obtains possession of it, and that each court must respect the judgment or decree of the other. A question decided at law, cannot be reviewed in a court of equity, without the suggestion of some equitable circumstance, of which the party could not avail himself at law." There must be an end to litigation ; and without offending principles of public policy, endangering the order and peace of society, and deranging the whole structure of our judicial system, a court of equity cannot intervene against the decree or judgment of a court of competent jurisdiction, because of facts known, or capable of discovery by reasonable inquiry, at the time of its rendition. Fraudulent practices or concealments may be resorted to by an unscrupulous suitor ; witnesses may be corrupted, or evidence suppressed, and an unjust, unconscientious judgment wrested from the court ; these must have been unknown, and

40

reasonable diligence not sufficient to have guarded against them ; the judgment must stand, or the conservatism of the law will be violated.    Freeman on Judgments, §§ 493–506.

There can be no fraudulent concealment imputable to Roberts, unless it is in reference to the alleged deposit of gold, and the moneys he is charged with having received from the sales of merchandise.    As to these, the evidence does not sustain the imputation.    The facts were as well known to the widow of the intestate, to her brother, to the administrator *de bonis non,* and to the guardian *ad litem* of the appellees, when the settlement was made in the court of probate, as when this bill was filed.  The widow, the mother, and her brother, the uncle of the appellees, are the material witnesses now, to establish the facts in reference to these moneys, and to fasten a liability for them on the appellant, the surety of Roberts.    The widow was personally present at the settlement, and was represented by counsel.    She was entitled to share in the distribution of the assets, and her interest was to compel a full accounting from Roberts. Manifestly, she was not under his influence, or bearing to him any kindly feelings.    According to her evidence, she had not only invited but pressed Roberts' resignation, because he did not account for the supposed deposit of gold. There was no difficulty in obtaining from her brother the evidence now given by him.  Roberts was in life, to answer, admitting or denying his liability.    The court was competent to adjudge, and to enforce its adjudication.    Litigation would never be quieted, and the decrees of the court of probate, rendered in the exercise of the most important branch of its jurisdiction, would be valueless, if a court of equity could reopen this settlement and decree, and enter on a new adjudication of the facts they involve.    The decree of a court of probate, rendered on the final settlement of an administration, its jurisdiction having attached, and being complete, is of equal dignity, and as final and conclusive, as the judgment of a court of law, or the decree of a court of chancery, not only of facts actually litigated and decided, but of all facts necessarily involved in its rendition.    *Watson* v. *Hutto,* 27 Ala. 515;  *Watt* v. *Watt,* 37 Ala. 547;  *Modawell* v. *Holmes,* 40 Ala. 404.

The appellees were, when the settlement was made and the decree rendered, and are now, minors, to whom, as a general rule, *laches* is not imputable ; and it may be insisted they should not be barred from reopening the decree, and renewing the litigation it involves, though the decree would operate to bar an adult.    The conclusiveness of judgments

[Waring v. Lewis.]

does not rest on the theory, that the parties have done or omitted any act, which precludes them from gainsaying it. Acts or omissions of a party may operate an estoppel. In *Kilheffer* v. *Herr*, 17 Serg't & Rawle, 324, says HUSTON, J.: "An estoppel is always something personal. The party is estopped from recovering his claim, or proving his defense, by some act in law, or in deed, or in *pais*, which precludes him from going beyond it, and proving all the case. But a former trial, verdict and judgment is not the act of the party, but of the tribunal which decided it; and to call it an estoppel, is a misapplication of terms; it has not the distinguishing mark of an estoppel; it is not the consequence of some act of the party bound by it; it is a bar to a future recovery in any court, on the same point, between the same parties, or privies, until reversed on appeal, or writ of error; and it is as much a bar in chancery, where an attempt is made to re-examine a matter once decided at law, as it is in a court of law." The supreme court of the United States have put the matter on its true ground, viz: "that the order and peace of society, the structure of our judiciary system, and the principles of our government, are the true grounds why such a judgment is conclusive." This is the true theory of the conclusiveness of judgments. A party whose rights of property, or whose liability on contracts, or whose liability in any form, is capable of the enforcement by civil action, and who has once been subjected to the jeopardy of trial, has a right to judicial immunity from further vexation, the same in degree that he who has been once in jeopardy of life or limb has to be freed from another trial for the same offense. Freeman on Judgments, § 247.

A judgment or decree, rendered against an infant represented by a guardian *ad litem*, is binding, and can be impeached only upon grounds which would be available if he were an adult. Freeman on Judgments, §§ 151, 513; Tyler on Infancy, 172; *Bustard* v. *Gates*, 4 Dana, 429; *Beningfield* v. *Reid*, 8 B. Mon. 105; *Preston* v. *Dunn*, 25 Ala. 507. His rights and interests are as subject to the jurisdiction of the courts, as the rights and interests of an adult, and must, of necessity, be the matter of frequent litigation. Because of his incapacity, the courts observe a vigilance and jealousy in adjudicating against him, not extended to suitors who are *sui juris*. A guardian *ad litem* is appointed by the court, who, in the presence of the court, makes full defense, and has not capacity to impair the defense, by any act, admission, or omission. The protective care of the court, and the fidelity of the guardian, is a security against an unjust judg-

ment. The fair and just presumption, after judgment, is, that the court has observed its duty, and compelled observance from the guardian. When the judgment is collaterally assailed, unless presumptions are indulged against the court rendering it, conclusiveness must be attached. If the decree rendered by the court of probate could be lessened in force, because of the infancy of the appellees, we might pause to inquire, what would restrain another tribunal from hereafter questioning and denouncing the judgment we may render. The court of probate was under the same obligation, when the decree was rendered, resting on the court of chancery when it was appealed to for relief, and the obligation to which we pay obedience. The decree must operate as a bar against the appellees, until it is successfully impeached on grounds available if the appellees were adults.

Independent of these considerations, the administrator *de bonis non* was before the court of probate, and the decree rendered was necessarily in his favor. He alone had a right to recover of Roberts, not only the unadministered assets, but compensation for any *devastavit* committed by him. The common law extended the authority of an administrator *de bonis non*, as the name imports, to the unadministered assets alone; to such as remained in *specie*, unaltered or unconverted by his predecessor. 1 Brick. Dig. 919, § 81; *Beall* v. *New Mexico*, 16 Wall. 535. His title was that of the intestate, and he could not, of consequence, recover of the administrator in chief for his delinquencies or *devastavits*, or compel a settlement of his administration. 1 Brick. Dig. 919, § 82; *Beall* v. *New Mexico, supra*; 2 Redf. Ex. 91. This principle of the common law was productive of delays and embarrassments in administrations, and was of special inconvenience to creditors. It was changed by statute, in 1846, authorizing the rendition of decrees on the final settlement of the administrator in chief, in favor of the administrator *de bonis non*, for the balance due from him on such settlement, and rendering the administrator *de bonis non* liable to account for moneys received on such decrees, in the same manner as if they had been received in the regular course of administration. Pamph. Acts, 1845–6, p. 14. The construction this statute received was, that it not only conferred on the administrator *de bonis non* authority, but that it imposed the duty, of compelling a settlement of the administration of his predecessor, and the collection not only of the assets unadministered, but an accounting for such as may have been wasted or converted. *Simmons* v. *Price*, 18 Ala. 405; *Whitworth* v. *Oliver*, 39 Ala. 286. The

[Waring v. Lewis.]

statute is substantially incorporated in the Code (R. C. §§ 2232–38); and its provisions were enlarged in 1858, by an enactment now forming a part of the Code. R. C. §§ 2165–68.

The purpose of these enactments was to relieve creditors and next of kin from the multiplicity of suits to which they were subject at common law, in being compelled to pursue the administrator in chief, for assets he may have wasted, and the administrator *de bonis non* for such as remained *in specie*, and from the doubt and uncertainty which must often have perplexed them, as to the proper party against whom to proceed. The construction given them must serve this purpose. When, as in the case now before us, the period for the presentment of claims has not expired, and the time arrived when the distributees are entitled to distribution, the administrator *de bonis non* must be regarded as having the exclusive right to call his predecessor to a settlement, and to recover of him for any waste or conversion of the assets, of which he may have been guilty. The title, authority and duty of the administrator *de bonis non*, in such case, in respect to the liability of his predecessor, is precisely that he has in reference to the choses in action of his intestate. Such is the construction similar statutes have received in other States. *Drunkle* v. *Sherwood*, 9 Watts, 489; *Carter* v. *Freeman*, 7 Barr. 315; *Stair* v. *York Nat. Bank*, 55 Penn. 364; *Shackelford* v. *Runyan*, 7 Humph. 141. Clothed with this title, authority and duty, the administrator *de bonis non* was before the court of probate when the settlement was made and the decree rendered. In his favor only could the decree have been rendered. It could not, without peril to the rights of creditors, and of the resigned administrator, have been rendered in favor of the distributees. Between the administrator *de bonis non* and the distributees there was a legal privity, which renders the settlement and decree binding on the latter, in the absence of fraud and collusion between the administrator *de bonis non*, and the administrator in chief. *Redmond* v. *Coffin*, 2 Dev. Eq. 443; *Mason* v. *Peters*, 1 Munf. 437; *Sanders* v. *Godley*, 23 Ala. 473; *S. C.* 36 Ala. 55. It may be, if the distributees were seeking to charge the administrator *de bonis non* with negligence in not obtaining a larger decree against Roberts, that the decree would be only *prima facie* evidence against them. But they are now pursuing the surety of Roberts, who stands affected by the decree as Roberts was affected. He may insist, as Roberts could have insisted, that having once litigated the matter with a proper party, the representative of the distrib-

[Waring *v.* Lewis.]

utees, the only party with whom he could litigate it, and before a court of plenary jurisdiction, which has finally adjudicated, he shall not be subjected to the vexation of another suit.

The result we reach is, that so far as the bill seeks relief, because of a *devastavit* imputed to Roberts, the settlement and decree in the court of probate is a positive bar. It is but just to add, that the evidence has not impressed us with the belief that such *devastavit* was committed. Suspicions may be generated; but it is just to presume, if Roberts were in life, confronting his accusers, the information he could give would neutralize and remove them.

It remains to consider the right to relief in the other aspects it may have been intended to present the case. The only material aspect is the manner in which the decree of the court of probate was satisfied. It was in fact satisfied with Confederate treasury notes, and the debts of third persons, assets in the hands of Roberts for administration, with which he was charged on the settlement. The decree was rendered in favor of O'Grady, the administrator *de bonis non*; payment of it was made to him, and he gave to Roberts a receipt, acknowledging full satisfaction. An executor or administrator is regarded, so far as duty and responsibility may be involved, as a mere trustee; as to third persons, they are treated as absolute owners of the personal assets, if there be no fraudulent concert with them. 1 Story's Eq. § 579; *Dickinson* v. *Lochyer*, 4 Vesey, 42. At common law, the legal title, coupled with the absolute power to alien and dispose of the entire personal assets, vested in him. If he aliened or disposed of them, and there was no collusion between him and the person to whom he transferred, the creditors, or next of kin, could not pursue them. 2 Redf. Ex'rs 212; 1 Lomax Ex'rs, 367–74; 1 Story's Eq. § 579; *Whale* v. *Booth*, 4 D. & E. 625; *Field* v. *Schieflin*, 7 Johns. Ch. 150. The statutes of this State have deprived an executor or administrator of the power to dispose of visible, tangible personal property, the subject of sale, otherwise than at sale under an order of the court of probate; and, with one or two exceptions, the sale must be at public outcry. 1 Brick. Dig. §§ 266, 274–75–76–77. In other respects, his title and power of disposition remain as at common law. He has the full legal title to the choses in action of the deceased, and is charged with the duty of collecting and reducing them to possession. He may transfer, release, compound, or discharge them, as fully as if he was the absolute owner, subject only to his liability to answer to creditors and distribu-

Vol. LIII.

[Waring *v.* Lewis.]

tees, for improvidence in the exercise of his power. *Wool-folk* v. *Sullivan*, 23 Ala. 548; *Moses* v. *Clark*, 46 Ala. 229. No *bona fide* dealing with him can be impeached—no remedy can be pursued against those to whom he may transfer, or to whom he may release, or with whom he may compound, or from whom he accepts satisfaction, of the choses in action, unless fraud and collusion can be imputed to them. *Hill* v. *Simpson*, 7 Vesey, 164; *Taylor* v. *Hawkins*, 8 Vesey, (*n*) 212; *McLeod* v. *Drummond*, 14 Vesey, 353; *S. C.* 17 Vesey, 152; 2 Redf. Ex'rs, 212 (*n* 10); 1 Story's Eq. § 580. It was certainly within the province of O'Grady, the administrator *de bonis non*, to accept or refuse Confederate treasury notes, in satisfaction of the decree rendered against Roberts. That decree was rendered in his favor; he had full legal title to it, and was bound to the duty of its collection. As between him and Roberts, his power of satisfying it, fraud or collusion not being imputable to Roberts, was that which he had over the choses in action of the intestate, or over his own choses in action. When the decree was rendered, and when it was paid, Confederate treasury notes were the circulating medium, and were used in all the current transactions of the country. Though not technically money, they had taken the place of bank notes, and were received and passed as money. A payment in bank notes, which are genuine, operates an extinguishment of the debt; and it was decided by this court, that such was the result, even though the bank was, without the knowledge of either party, insolvent at the time of the payment. *Lowry* v. *Murrell*, 2 Port. 280. Gold and silver only are a legal tender in payment of debts; but since the introduction of bank notes, and their use as money has become general, it has been settled that a tender in bank notes, if not specially objected to, is sufficient. A payment in a description of money which, if not objected to, is good as a tender, must be a valid payment. The reason is given by Lord Mansfield in *Miller* v. *Race*, 1 Burr. 457, that bank notes "are not goods, nor securities, nor documents for debts, nor are so esteemed; but are treated as *money*, as *cash*, in the ordinary course and transaction of business, by the general consent of mankind; which gives them the credit and currency of money, to all intents and purposes. They are as much money as guineas themselves are; or any other current coin, that is used in common payments, as money or cash. On payment of them, whenever a receipt is required, the receipts are always given as for money, not as for securities or notes." Confederate treasury notes were, when this payment was made, treated as money or cash; they had

[Waring *v.* Lewis.]

the currency and credit of money, and were usually accepted as such in payment of debts. A payment in them must be esteemed as a payment in money. Whatever liability an executor or administrator, or other trustee, may have incurred to his *cestui que trusts*, by accepting them in satisfaction of a debt due the trust estate, as to the debtor the debt is extinguished, as completely as if payment had been made in gold and silver.

We have been referred to the several decisions of this court, that an attorney, or other agent for the collection of a debt, has not authority to accept in payment anything but gold and silver, and that if he does, it is a satisfaction only at the option of the client, or principal, to whom the debt is due. *West, Oliver & Co.* v. *Ball & Crommelin*, 12 Ala. 345; *Chapman* v. *Cowles*, 41 Ala. 105. These authorities rest on the clear ground, that an attorney, or other mere agent for collection, has only authority to receive money in payment of the debt, unless special instructions are given him. He is in no sense an owner of the debt, and is without any power of disposition. An executor, administrator, or other trustee, clothed with the legal title, to which the power of disposition is incident, is not in any sense an agent, nor confined in power as is an agent. It is his province to collect the *choses in action*; to reduce them to possession; and he may do whatever his discretion dictates, as fully as if he was clothed with the legal and equitable title, subject only to his liability to the *cestui que trusts*, there being no collusion between him and the person with whom he deals. The decree of the court of probate was extinguished by the payment to O'Grady; and if the appellees have any cause of complaint, because of the payment, it is against him, and not against Roberts, or the appellant as his surety. It is difficult to conceive of a decision that would be fraught with more unmitigated evils, more productive of litigation, confusion, and injustice, than that *cestui que trust* can successfully impeach and annul every payment made to a trustee, in other money than gold and silver, and hold the debtor to another payment in such moneys as they may elect to receive. No principle of law or equity authorizes it.

The only remaining aspect in which the case has been pressed is, that the loan made by Roberts to appellant was without authority of law, and a *devastavit*, in which the appellant participated, and thereby possessed himself of the assets of the intestate, for which he is liable to account. From this liability, it is insisted, he is not discharged, because of his payment to Roberts, made after his resignation.

[Waring *v.* Lewis.]

It is certainly true, an administrator, without an order of the court of probate, is not under the duty of loaning the money, the assets of the intestate. If such duty rested on him, he would be chargeable with interest on the moneys in his hands, which he could safely and conveniently have loaned. The statute, in express terms, relieves him from liability for interest, if he has not used the moneys. R. C. § 2148. He keeps within the strict line of duty, when he safely preserves the moneys he has received. If he makes a loan, or otherwise employs them, no matter what degree of good faith and diligence he may exercise, it rests within the election of the *cestui que trust,* to accept or reject his investment, and to charge him with the funds so used. *Gerald* v. *Bunkley,* 17 Ala. 176. The election to accept the investment, or to charge the administrator, must be made on the final settlement of the administration in the court of probate. It very clearly appears the election was made on Roberts' final settlement, and that he was charged with the moneys loaned to the appellant, and that they constituted the principal part of the large decree against him. This being true, the debt of appellant became Roberts' individual property, payable to him only, and he alone could have sued thereon, or had the right to demand and receive payment of it. *Hall* v. *Chenault,* 13 Ala. 710; *Tompkies* v. *Reynolds,* 17 Ala. 114; *Sherburne* v. *Goodwin,* 44 N. H. 277. Of all equity the appellees could ever have asserted to *it,* they were divested by electing to charge Roberts with the moneys loaned.

In no point of view, in which the case has been presented, can the decree against the appellant be supported. In refusing the appellees relief, in the matters presented by their assignment of errors, there was no error. The error lies only in the decree against the appellant. On the cross appeal prosecuted by the appellees, the decree must be affirmed. The decree against appellant must be reversed, and a decree here rendered dismissing the bill, at the costs of the next friend of the appellees, in this court, and in the court of chancery.