# Noble *v.* Moses Brothers.

*Bill in Equity to vacate Judgment, and for Account and Redemption under Mortgage.*

1. *Fraud, as ground of equitable relief against judgment.*—The general rule is, that a court of equity will vacate and set aside a judgment at law, on the ground of fraud, *only* when the fraud was practiced in the rendition or procurement of the judgment itself; that fraud in antecedent transactions, not connected with the proceedings in the cause, and which would merely have constituted a good defense to the action, is not sufficient; and that the fraud must be actual and positive—utterly repugnant to honest intentions.

2. *Accident, mistake and fraud, as grounds of equitable relief against judgment.*—When there was no fraud in the act of obtaining or procuring the judgment, but equitable relief against it is sought on grounds which go to the merits of the original action, and which would have been available as a defense at law, the complainant is required to allege and prove, 1st, that he has a good and meritorious defense to the cause of action, or so much thereof as he proposes to litigate; 2d, that his failure to defend at law was not attributable to his own omission, fault, or neglect; and, 3d, that it was attributable to fraud, surprise, accident, or some act of his adversary, the plaintiff at law.

3. *Transactions between parent and child; equitable relief against.* Business transactions between a father and his unmarried daughter, whose guardian he had been until she attained her majority, and who then continued to reside in his household as a member of his family, will be scrutinized with watchful jealousy by a court of equity, and will not be permitted to stand, when it appears that, by the exercise of undue influence, the father obtained an improper benefit or advantage; and his failure to make a full disclosure of all material facts affecting his dealings with her, as between other persons occupying a fiduciary relation toward each other, would authorize the court to set aside such transactions, at the option of the daughter seasonably expressed.

4. *Same; dealings of father, as agent, with third persons.*—This principle can not be applied to third persons, who dealt with the father as agent of his daughter, advancing large sums of money to enable him to carry on farming operations in her name, and in whose favor the daughter, having executed a mortgage to secure such advances, afterwards confessed a judgment for the large balance due; when the evidence shows that the father was ruinously insolvent, and carried on his business operations, though nominally as agent of his daughter, really in secret trust for the benefit of himself and his family; and that the daughter knowingly lent him her credit, signed promissory notes for his indebtedness, on accounts furnished to him and admitted by him to be correct, and confessed the judgment for the amount of these notes. The plaintiffs in the judgment, in their dealings with the father, as shown by the evidence, having acted with the utmost fairness, good faith, and liberal indulgence, they are not chargeable with fraud on account of the fiduciary relation existing between the father and daughter, and his failure to make a full disclosure to her of all material facts connected with his said business transactions.

[Noble v. Moses Brothers.]

5. *Innocent sufferers by wrongful act of third person.*—Whenever one of two innocent persons must suffer by the wrongful act of a third person, he must bear the loss who enabled the third party to cause it.

6. *Usury.*—Usurious interest, when paid, can not be recovered back; yet, if any part of the debt remains unpaid, and even when it is carried forward into a new transaction, this balance may be abated by deducting the usurious interest paid.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 2d January, 1882, by Mrs. Lucy B. Noble, the wife of Edward F. Noble, against the persons composing the firm of Moses Brothers, a partnership doing business in the city of Montgomery; and sought to vacate and set aside, on allegations of fraud, undue influence, usury, and other grounds, a judgment for $13,053.35, which the complainant had confessed in favor of the defendants, in the City Court of Montgomery, on the 13th March, 1877; also, for an account of the various transactions between the parties, both before and subsequent to the rendition of the judgment, and for redemption under a mortgage. which the complainant had executed to said defendants to secure an indebtedness growing out of the same transactions on which the judgment was founded.

The complainant was the daughter of B. H. Micou, and inherited from her deceased mother, jointly with her only sister, Clara E., a large estate, consisting of real and personal property.. B. H. Micou became the guardian of his two daughters, by appointment of the Probate Court of Montgomery county, and gave bond in that capacity, with Thos. M. Barnett and Nich. D. Barnett as his sureties. In 1874, said Micou became hopelessly insolvent, through his connection with the Tallassee Manufacturing Company; and his daughter Clara having married with Frank Boykin, he was cited to make a settlement of his said guardianship. On this settlement, a decree was rendered against said Micou, in favor of each of his daughters, for more than $80,000; and the property owned by him and his said sureties not being more than sufficient to satisfy these decrees, the daughters assigned the decrees to H. C. Semple, to be held and enforced by him on certain trusts specified in the assignment; that is to say, executions were to be issued on the decrees, and levied on all the property of said Micou and his sureties, including several valuable plantations; and when the property was sold under the executions, it was to be bought in by Semple at the amount due on the decrees, and was to be held by him for the benefit of the families of said Micou and Barnetts respectively, but each charged with a certain portion of the debt evidenced by the decrees. The property was

[Noble v. Moses Brothers.]

accordingly sold under the executions, and was bought in by Semple.

Among the property so sold was Micou's life-estate in a large plantation, together with all the personal property belonging to it, and the crops raised on it during the year 1874; "but," as the bill alleged, "inasmuch as it was the intention of complainant and her said sister that her father's family, consisting of his second wife and one child by her, should, during his life, have the benefit of the use of said plantation for their support and maintenance, and the same had been intended to be provided for in said deed of trust, the said H. C. Semple, under instructions from your oratrix and her sister, and for the purpose of carrying out the intent of said deed of trust, permitted said Micou to retain possession of said plantation for his said wife and child; and as said Micou was insolvent, and without credit, and his wife and child were, by reason of their *status*, unable to obtain credit, to make the possession of said lands useful by their cultivation, the said Micou induced your oratrix, who was just of age, and resided with him, and reposed in him all the confidence a daughter could repose in a father, to consent to have farming operations carried on in her name upon the said lands, and upon a plantation known as the 'Campbell place,' which belonged to her and her said sister, and was near to the other lands. Said Micou undertook to have said farming operations conducted in the name of your oratrix, and applied to said Moses Brothers, in her name, for a loan of money to assist in conducting the same. Said Moses Brothers agreed to make the advances, and thereupon prepared a mortgage for your oratrix to sign, of the crops and certain personal property, to secure advances for that year, not to exceed $500 per month, which your oratrix signed; and thereupon said Moses Brothers opened an account on their books with your oratrix, which she states, on information, has been continued ever since. New arrangements were made, from year to year, for the advances for that year; but your oratrix has never seen any of the accounts of the said firm, except for the year 1879, as hereinafter shown, and she knows nothing of the contents thereof, except from information imparted to her within the last few months. Reposing every confidence in her said father, your oratrix left the conduct of the entire business to his management, and signed all papers presented to her for signature, without knowing the effect of the same, and without reading them; and all settlements between her and said Moses Brothers, from the opening of said accounts to the date of the last settlement, have been entirely between said Moses Brothers and said Micou."

The bill alleged, also, "that said Moses Brothers furnished advances to said Micou, agent, during said year, at the rate of

[Noble v. Moses Brothers.]

twenty-five per-cent. *per annum*, or other rate exceeding lawful
interest, to the amount of $2,500, and furnished to said Micou
large sums of money, to be used by him for purposes other and
entirely different from carrying on said plantations, or for
family supplies, or for any of the purposes expressed in said
mortgage, with full knowledge on their part that said money
was to be so used, and in fact was so used; and they charged
up, in their account against your oratrix, all the moneys so fur-
nished by them, with the usury thereon.    In the spring of the
year 1876, when said Micou needed further advances to carry
on farming operations for another year, said Moses Brothers
declined to furnish any further advances, unless said Micou
would procure from your oratrix a mortgage on lands to secure
them in what they claimed was owing to them; and they then
stated an account with said Micou, and claimed that your
oratrix owed them a large sum of money, to-wit, the sum of
$13,460, after crediting her with the whole proceeds of sale of
the crops raised on the several plantations during the year
1875; but said sum was largely made up of usurious interest,
and charges against said Micou for which your oratrix was not
in any sense liable.    Said Moses Brothers never furnished any
account of the items of said indebtedness to your oratrix, and
never informed her in any way of what said indebtedness con-
sisted; and they well knew that your oratrix did not know any
of the particulars of the business so transacted between them
and said Micou.    Being desirous of procuring further advances,
said Micou undertook, at the instance and request of said Moses
Brothers, to procure said mortgage for them; and he repre-
sented to your oratrix that there was really due to said Moses
Brothers, on account of advances made by them for the year
1875, the said large sum of money; when in fact and in truth,
as your oratrix charges, the said sum for which they demanded
that your oratrix should give the said mortgage security was,
to a large extent, made up of said usurious interest, and of the
sum of $3,000, or other large sum, which said Micou was
owing to them on account of certain transactions had between
them in the year 1874, or prior to the dealings of your oratrix
with them, and for which she never was or agreed to be liable;
and your oratrix avers that, at the time of these transactions,
she had no knowledge or information of these facts, and never
had such knowledge or information until recently before the
filing of this bill, but relied entirely on the statements made to
her by said B. H. Micou; and the said Moses Brothers, knowing
what authority and influence her father had with your oratrix,
and how entirely she relied on his statements, induced the said
B. H. Micou falsely to represent to your oratrix that the said
amount truly represented the losses in the said farming opera-

tions for the year 1875, and was the sum due to said Moses Brothers; intending thereby fraudulently to procure from your oratrix a security for a debt which she did not owe, and which she was not bound to pay; and your oratrix, then believing that said Moses Brothers had it in their power to sell the personal property which she had mortgaged to them, for the payment of the whole of said amount, and that the said sum was the just amount of losses on the farming operations of the said previous year, and said Moses Brothers further offering, as an inducement, that they would extend the said indebtedness another year, and would not foreclose the mortgage on said personal property, then consented to execute the mortgage demanded of her, and on the 7th February, 1876, did execute her note for said sum of $13,460.94, due the first of December then next, with interest from date, and, to secure the same, also executed a mortgage" on certain lands; and at the same time, in order to enable Micou to obtain advances for farming operations another year, she executed to said Moses Brothers "a crop-lien note and a mortgage on the crop and stock on said plantation, and on all other real estate in which she had any interest."

These are the material allegations of the bill as to the execution of the mortgage, and the consideration on which it was founded. As to the judgment afterwards confessed, the bill contained the following allegations: "At the end of the year 1876, fearing that your oratrix might become informed of the amount of usurious interest which they had charged up to her, and of the fact that they had charged to her an old debt against Micou, and other illegal and improper charges, and that she might set up the same in defense of their claim against her, said Moses Brothers demanded that they should be further sesured in their said claim by having said note reduced to judgment against your oratrix, so as to conclude her against making any defense against the same; and refused to make any further advances to said Micou, except upon the terms of having said claim reduced to judgment against your oratrix, and offered and agreed with said Micou that, if he would induce your oratrix to consent that a judgment for said claim should be taken against her, they would continue to make such advances to him as he might [require], and would not enforce said judgment, but would hold the same simply as a security until the same could be conveniently paid off; and your oratrix being completely in the power of said Moses Brothers, having mortgaged to them all her property, and having no security left to offer to any other person, whereby supplies could be procured to carry on said farming operations, and it being then ruinous to abandon said farming business, said Micou undertook to ob-

tain from your oratrix, for them, a consent that judgment should be rendered against her upon said note. Said Moses Brothers never presented to your oratrix any statement of their account, and she was never informed of what their claim against her consisted; but, being influenced by her said father, and believing that said note truly represented what was due to them from her, your oratrix consented that a judgment should be rendered against her on said note." Accordingly, an action at law was instituted against her by said Moses Brothers, and service of process was accepted by her; and on the 13th March, 1877, a judgment by confession was entered against her, by attorneys whom she had authorized to do so, in favor of said Moses Brothers; and this judgment was entered for the full amount of the note with interest, though, as the bill alleged, the note was entitled to a credit of $4,000, on account of money which Moses Brothers had received, on Micou's draft, from Lehman, Durr & Co. "Your oratrix did not have any *data*, from which she could ascertain what was the amount really due on said note and mortgage, and she relied entirely on the statement of her father as to the correctness of the sum for which she should confess judgment; and she avers that said Moses Brothers took advantage of the influence which her father had over her, to thus fraudulently and wrongfully obtain the said judgment against her, for a much larger sum than was really due on said note and mortgage; and your oratrix now claims the right to show that said judgment was fraudulent and wrongful as to her. After the rendition of said judgment, Moses Brothers insisted that said credit of $4,000 should be erased from said mortgage, and said Micou consented to the same; and the said credit was erased, without the knowledge or consent of your oratrix."

At the commencement of the year 1879, the farming operations being carried on as before, it became necessary for H. C. Semple to sell some of the property which he held in trust, and which Moses Brothers desired to purchase; and by agreement among all the parties, the estimated price of the property being about $10,000, Moses Brothers paid him $6,000 in cash, and agreed to credit their judgment against complainant with the sum of $3,950; and the further sum of $5,000 having been obtained by loan from Lehman, Durr & Co., on Micou's draft accepted by Moses Brothers, they agreed that this sum should be credited on their said judgment. In reference to these matters, an agreement reduced to writing on the 28th April, 1879, and signed by said Moses Brothers and the complainant, contained the following recitals and stipulations: "Whereas, I, Lucy B. Micou, am indebted to Moses Brothers, of Montgomery, Ala., on account of advances for the year 1879, ex-

39

clusive of crop-lien mortgage for $6,000, in the sum of $1,100, as evidenced by two bills of exchange," particularly described, "and by balance brought down to new account, as of March 20th, 1879, as stated in another agreement this day signed by me, in the sum of $654.50 ; also in sundry other sums advanced to me and to my agent, B. H. Micou, and agreed by them to be advanced to me and my said agent, at my request, whether for plantation purposes, family expenses, insurance, taxes, or other purposes, paid out or to be paid out on the order of myself or my said agent, estimated and agreed by me not to exceed the sum of $600, from March 20 to September 1st, 1879 ; making the estimated sum which will be due by me on these advances, on Sept. 1st, 1879, about or nearly $2,400 in the aggregate : Now, therefore, in consideration of the premises," said Lucy B. Micou assigned to said Moses Brothers all her accounts against the tenants and laborers on three specified plantations, and all crops received from them, to be sold by Lehman, Durr & Co., on commission, and to make up any deficiency out of the surplus of the crop conveyed by the $6,000 mortgage, &c. "And we, the said Moses Brothers, in consideration of the said agreements made by said Lucy B. Micou, agree to make the advances as aforesaid, not to exceed $2,400 ; also, to credit said mortgage now in judgment with the sum of $3,950, being the amount received of H. C. Semple, for account of said Lucy B. Micou, March 27th, 1879, as of that date ; and with the further sum of $5,000, being the amount received of Lehman, Durr & Co., for account of said Lucy B. Micou, March 28th, 1879, as of that date ; and we further agree that the balance due on said old mortgage now in judgment, after being credited with said sums of $3,950 and $5,000, may be paid as follows," specifying four annual installments, the last falling due March 25th, 1883 ; "provided, however, that on default in the payment of any one of the above stated payments, the entire amount of said old mortgage now in judgment shall be due and payable."

The bill alleged that these credits had never been entered on the judgment, and that Moses Brothers were proceeding to enforce the judgment for its full amount ; and prayed that, on the hearing, said judgment be credited with said sums, as of the dates above specified ; "and that it be further decreed that said judgment is not conclusive on your oratrix, but that the same may be opened for the purpose of crediting the debt on which the same was founded with all just credits to which she was entitled at the time the same was rendered ; and that all usurious interest charged against her by said Moses Brothers, upon any part of said debt, with all other improper charges, be allowed to her as credits on said debt; and that an account be stated between your oratrix and said Moses Brothers of all dealings

[Noble v. Moses Brothers.]

between them since the execution of said note and mortgage; and that on said accounting all charges for illegal or usurious interest may be disallowed, and all other charges for which your oratrix is not legally liable, and she be credited with the proceeds of all crops raised on said plantations and delivered to said Moses Brothers, and with such other items of credit as she may be justly entitled to; that if, upon such accounting, it shall appear that the said debt has been fully paid, then said judgment shall be decreed to be satisfied in full, and said mortgage cancelled;" and for other and further relief under the general prayer.

An amended bill was afterwards filed, which alleged that, "at the end of the year 1875, said Moses Brothers, who had received, as mortgagees, the crops raised by complainant on said three plantations during that year, and had sold the same, or had them sold for their benefit, and were under obligation to keep and render true accounts of their dealings for her as her factor and trustee, and who had notice that she was only carrying on business on said plantations, made up an account with your oratrix, purporting to truly represent her indebtedness to them on account of the transactions for the year 1875, as balanced up to February 7th, 1876; but your oratrix avers that said Moses Brothers, knowingly and fraudulently inserted in said account an item of over $5,000, as of date January 1st, 1876, for which they knew she was in no manner liable; the said item being a balance on their books against one F. S. Boykin, contracted by him with said Moses Brothers during the year 1875, and so charged up to your oratrix without her knowledge or consent. Your oratrix never had any connection whatever with the transactions resulting in said balance against Boykin, and never knew or suspected, until after the filing of her original bill in this case, that any such sum or item had been charged against her. She reposed entire confidence in' said Moses Brothers, who were her agents for the collection of the rents of her real estate in the city of Montgomery, and were mortgagees of her crops, and her trustees for the sale of the same, to keep and render true and accurate accounts of all her transactions with them; and she likewise reposed the same confidence in her said father for the honest and faithful discharge of his duty as her agent, of which said Moses Brothers were well informed; and for these reasons she took it for granted that all dealings between said Moses Brothers, as her agents, mortgagees and factors, and said Micou as her agent, were correct, and therefore never inquired into any of them, nor examined or saw any of the accounts, but signed, without hesitation, all papers presented by her father for her signature, relating to the management of said business, which she left

wholly to said Moses Brothers and her father." It was alleged, also, that this item was so charged against the complainant, and included in her said note on which the judgment was obtained, pursuant to an agreement between said Moses Brothers and Micou, of which she had no knowledge or information; that Micou had no authority to make any such agreement, and Moses Brothers knew that the act was a violation of the trust and confidence reposed by complainant in him and them; and that said Moses Brothers, in thus including said item in the note and mortgage, and taking judgment for the amount of the account thus wrongfully enlarged, committed a fraud upon her, and the judgment should not be held binding on her.

An answer to the bill was filed by Moses Brothers, and also an answer to the amended bill. They denied the charges of fraud, misrepresentation and concealment on their part, and denied that any confidential relations ever existed between themselves and the complainant. They alleged that, in the beginning of their business transactions with Micou, they agreed to render him assistance in the cultivation of the several plantations under his charge, as a matter of personal favor to him, and in return for kindness which they had formerly received from him; that the business of the plantations was in fact carried on by Micou for the benefit of himself and his family, though nominally in the name of his daughters; that one of the plantations, during the year 1874, was conducted in the name of said F. S. Boykin, who had married Clara E. Micou, and the others in the name of the complainant, though the entire business was managed by said Micou, who gave them no reason for wishing the accounts so kept; that at the end of the year, a large balance being due to them from Micou, they could not make advances to him another year, unless arrangements were made by which they could borrow the necessary moneys; that they were not engaged in the business of lending money, nor making advances on crops; that Micou assured them that his daughter, the complainant, would lend him her name and credit to carry on the farming operations, and would sign the necessary papers to extend and continue his indebtedness; that they had but slight acquaintance with the complainant, but knew that she had a large estate, and was living with her father, and was able to assist him; that they had the notes and mortgages prepared, and handed them to Micou, who returned them with the complainant's signature; that they always rendered full and accurate accounts to Micou, and had no reason to suppose that he withheld any information from the complainant. They denied the charge of usury, and alleged that, when they were compelled to borrow money for Micou, they only charged him the same rate of interest they were compelled to pay for

[Noble v. Moses Brothers.]

the money.   They alleged that the note for $13,460 was given for the amount of Micou's actual indebtedness to them at that time, on account of the farming operations carried on in his daughter's name; that full and accurate accounts of all these matters were furnished to him from time to time, and he procured his daughter's signature to the note and mortgage without any interview or communication between her and respondents; that they then had full confidence in the integrity and honor of Micou, and did not believe that he made any fraudulent concealment or misrepresentation of facts to procure her signature.   They alleged that they insisted on the recovery of a judgment in their favor, because the indebtedness was increasing every year, and they wished a judicial ascertainment of the amount due them; and that the judgment was confessed for the amount actually due, and admitted to be due to them.   They admitted that they had not entered the credits on said judgment, as stipulated in the written agreement above set out, and insisted that they were not bound to do so, because Micou had perpetrated a fraud on them in inducing them by false representations to enter into said agreement; and because they had been compelled themselves to pay the $5,000 borrowed from Lehman, Durr & Co. on their acceptance, which the complainant had promised to pay, but had failed to do so, and that the promise on her part was the only consideration for their promise to enter the $5,000 as a credit on the judgment.

On final hearing, on pleadings and proof, the chancellor held that the judgment was valid and binding, but that the complainant was entitled to an account of all subsequent transactions between her (or B. H. Micou as her agent) and Moses Brothers, and that she was entitled to have a credit of $5,000 entered on the judgment, as stipulated in the written agreement above set out; and he further held that the charge of usury was not sustained.

From this decree the complainant appeals, and here assigns as error the refusal of the chancellor to open and set aside the judgment, and his refusal to sustain the charge of usury; and there is a cross assignment of error by Moses Brothers, based on that part of the decree which required a credit of $5,000 to be entered on their judgment.

GUNTER & BLAKEY, and RICE & WILEY, for the complainant. The bill is filed on the concession that Micou was the lawful agent of the complainant, and that she is bound by all his acts done within the scope of his authority, or ratified by her with full knowledge of all the facts which ought to have been communicated to her; but, starting with this concession, it is insisted that the defendants have taken advantage of the relation

of trust and confidence which existed between her and her said agent and father, and of which they had notice, to procure a judgment by confession for a large amount, including items aggregating thousands of dollars, for which she was in no sense liable, and which she never would have recognized as a part of her indebtedness if she had been informed of the facts. Although the relation of guardian and ward between the complainant and Micou had ceased, its influence continued, with the superadded relation of father and child; and she remained a member of his family and household. Business dealings between persons thus situated are scrutinized closely by a court of equity, and are never sanctioned, unless shown to be characterized by the utmost good faith, which involves a full disclosure of all material facts, and the removal of all undue influence. Story's Equity, §§ 307–09; *Huguenin v. Baseley*, 2 L. Cas. in Eq. 598, mar.; *Whelan v. Whelan*, 3 Cow. 537; *Whelan v. Mc-Crary*, 64 Ala. 326; *Lee v. Lee*, 55 Ala. 590; *Rhodes v. Bate*, 1 L. R. Chan. App. 252; *Taylor v. Taylor*, 8 Howard, 199. These principles apply with equal force to the transactions between the complainant and Moses Brothers, conducted through the agency of Micou. They had notice of Micou's agency, and were bound to know the extent of his authority; and they can not reap the fruits of any advantage obtained over the complainant by their dealings with her agent, in direct violation of his trust. The burden of proof was on them to show that the fullest information was imparted to the complainant of all facts which she ought to have known; and they can neither shield themselves behind the fact of Micou's agency, nor invoke the estoppel of the judgment.—*Huguenin v. Basely*, 2 L. Cas. Eq. 598; *Whelan v. Whelan*, 3 Cowen, 537; *Taylor v. Taylor*, 8 Howard, 199; *Pierce v. Wilson*, 34 Ala. 607; *Bowers v. Johnson*, 10 S. & Mar. 169; *Beaumont v. Boultbee*, 5 Vesey, 492; *Rogers v. Batchelor*, 12 Peters, 231; 19 Amer. Dec. 603; 2 Texas, 331; *Archer v. Hudson*, 7 Beavan, 560; *Oliver v. Piatt*, 3 How. 363; *May v. LeClaire*, 11 Wall. 217; 11 Jur. N. S. 254; *Baker v. Bradley*, 7 DeG., M. & G. 597; *Seecombe v. Sanders*, 34 Beavan, 382; *Maitland v. Brown*, 15 Sim. 437; *Hamilton v. Mohun*, 1 P. W. 118; 2 Wash. C. C. 397; *Hall v. Perkins*, 3 Wendell, 626; Hov. Fr. 501; *Dent v. Bennett*, 7 Sim. 239; *Gibson v. Russell*, 2 Y. & C. 578; *Popham v. Brooke*, 5 Russ. 7; *Boyce v. Grundy*, 3 Peters, 219; *Lester v. Mahan*, 25 Ala. 445; *Simpson v. Lord Howden*, 3 M. & C. 97; *Pearce v. Olney*, 20 Conn. 544; 7 Ill. 385; 3 Md. Ch. 322; 1 John. Ch. 320; 2 Iowa, 55; *Wormley v. Wormley*, 8 Wheaton, 442; 36 Vermont, 608; 43 Wisc. 213; *Waddell v. Lanier*, 62 Ala. 347; *Whetstone v. Whetstone*, 31 Iowa, 276; 2 P. W. 74; 1 Sch. & Lef. 355; 12 N. Y. 165; 20 Iowa, 172.

[Noble v. Moses Brothers.]

TROY & TOMPKINS, *contra.*—If the allegations of the bill were fully sustained by the proof, they would not make out a case for equitable relief against the judgment; since they do not show fraud in the rendition of the judgment, nor that it was procured by accident, mistake, or fraud, unmixed with negligence on the part of the complainant herself.—*McGrew v. Bank,* 5 Porter, 547 ; *Stinnett v. Br. Bank,* 9 Ala. 120; *Garrett v. Lynch,* 45 Ala. 204 ; *Waring v. Lewis,* 53 Ala. 615 ; *Taliaferro v: Br. Bank,* 23 Ala. 755 ; *Foster v. Wood,* 6 John. Ch. 87 ; *Miller v. Gaskins,* 1 Sm. & Mar. Ch. 524 ; *Kinney v. Ogden,* 2 Green's Ch. 168 ; Freeman on Judgments, 485, 528 ; 1 Dill. C. C. 536 : 2 Story's Equity, § 1575 ; *Hair & Labuzan v. Lowe,* 19 Ala. 224; *Holt v. Agnew,* 67 Ala. 360 ; *Green v. Thompson,* 2 Ired. Eq. 365 ; 23 N. J. Eq. 486 ; *Nace v. Boyer,* 30 Penn. St. 99 ; 94 U. S. 207. The evidence acquits the defendants of all blame, and establishes the utmost good faith, fairness and generosity, on their part, in all their dealings with Micou. They furnished to him full and accurate accounts, from time to time, of all their transactions, and had the right to presume that these accounts were submitted to his daughter, and were understood and approved by her. If these accounts were never submitted to her, or if any of the transactions of her said agent, to whom she loaned her name and credit, exceeded his authority, and were injurious to her, the fault can only be attributed to the wrongful conduct of her agent, and to her own misplaced confidence in him. The charge of usury, also, is not sustained by the evidence ; and as to all transactions antecedent to the judgment, it is not an open question.—*Perkins v. Cowart,* 29 Ill. 184 ; Tyler on Usury, 403, 450 ; *Munter & Faber v. Linn,* 61 Ala. 493 ; *Smith v. Stoddart,* 10 Mich. 148 ; 12 Iowa, 300. On the facts proved, it is submitted that the defendants ought not to be compelled to enter credits on their judgment, as stipulated in the written agreement of April 28th, 1879, when the complainant has failed to comply with her promises which constituted the consideration for that agreement.—1 Brick. Dig. 692, § 758 ; 1 Story's Equity, §§ 742, 750, 769, 770 ; *Gentry v. Rogers,* 40 Ala. 442 ; *Stuart v. Peay,* 21 Ark. 117.

SOMERVILLE, J.—The purpose of the present bill is to vacate and set aside a judgment for something over thirteen thousand dollars rendered in the City Court of Montgomery, on March 13, 1877, against the appellant as defendant, and in favor of the appellees, Moses Brothers ; and, furthermore, to bring the appellees to account as mortgagees, and to redeem the mortgaged property. The judgment in question was confessed in open court by an attorney, on the written authority of ap-

pellant, who was then unmarried and of age; the debt being evidenced by her promissory note, which was at the time secured by a mortgage on her property, and which had been put in suit by regular issue of summons and complaint.

The chief point of contention relates to vacating the judgment upon the alleged ground of fraud, accident and surprise; and the case involves the consideration of the circumstances under which this particular jurisdiction of equity can be invoked. There can be no controversy as to the general rule on the subject. It is settled to be, that the fraud which is imputed to the plaintiff in the judgment, and for which alone a court of equity will intervene to vacate or enjoin, must be *fraud in the rendition or procurement of the judgment itself.* *Crommelin v. McCauley,* 67 Ala. 542. Or, as expressed by Mr. Story, " the fraud must have been practiced in the very act of obtaining the judgment"—there must be "fraud in its concoction."—2 Story's Eq. Jur. § 1575. Fraud as to transactions antecedent to the judgment, such as would merely have constituted a good defense to the action, and not connected with the *proceedings* by which it was obtained, is deemed insufficient. Freeman on Judgments, §§ 489–490; Story's Eq. Jur. § 1574.

The nature of the fraud, too, must be such as is utterly repugnant to honest intentions. It must, in a sense, be shown to be actual and positive. To this end, there must exist the *malus animus,* "putting itself in motion, and acting in order to take an undue advantage, for the purpose of actually and knowingly committing a fraud."—Kerr on Fraud and Mistake, 353. When this is clearly established by proper proof, as said in a former decision of this court, "it is honorable to our system of equity jurisprudence, that such infection of fraud is made to vitiate every transaction, and the solemn judgments of courts are no exception to the salutary rule."—*Crommelin v. McCauley,* 67 Ala. 547, *supra.*

If there be no fraud in the act of obtaining or procuring the judgment, and equitable relief be sought against the judgment on a ground which went to the merits of the original suit at law, and which would have been available in that forum, the complainant is required, as a condition precedent to relief, to prove, as well as aver, three things: *first,* that he has a good and meritorious defense to the cause of action, or so much of it as he proposes to litigate; *second,* that his failure to defend at law was not attributable to his own omission, fault, or neglect; and, *third,* that it was attributable to fraud, surprise, accident, or some act of his adversary, the plaintiff in the judgment. *Weems v. Weems,* 73 Ala. 462; *Collier v. Falk,* 66 Ala. 223; Freeman on Judgments, § 486; Willard's Eq. Jur. 161–163. There will be, in other words, no interference with the judg-

ment at law, or re-opening of the litigation involved in its ren-
dition, unless a defense at law was prevented " because of acci-
dent, or the fraud or act of his adversary, unmixed with fault
or negligence on his part."— *Waring v. Lewis*, 53 Ala. 615 ;
*Duckworth v. Duckworth*, 35 Ala. 70 ; 2 Story's Equity Jur.
§§ 887–8.

We can not see that the testimony in the present case au-
thorizes us to grant the complainant the relief sought, under
either of the principles above stated.    The chancellor refused
to allow the judgment to be vacated, on either of these grounds;
and in this, we think, his decree must be sustained.

It may be conceded, perhaps, that the facts disclosed in the
record would entitle the complainant to relief against Micou,
through whose operations and agency her large indebtedness to
the defendants seems to have been contracted.     He was the
father of the complainant, and had a few years ago been her
guardian.    She continued to reside in his household, and her
transactions with him may not improbably have been affected
by the pressure of their fiduciary relations.     Transactions be-
tween a parent and child, under such circumstances, would be
scrutinized with watchful jealousy by a court of equity, and
would not be permitted to stand, if it appeared that a naked
bounty had been conferred, or a large benefit derived by the
parent and late guardian through the instrumentality of undue
influence.    And certainly the rule in such cases is, that the
failure of one holding such a fiduciary position to make an hon-
est disclosure of every material fact, affecting his contracts or
dealings with his child and late ward, would authorize such
transactions to be avoided, at the option of the injured *cestui
que trust*, if seasonably expressed.—1 Perry on Trusts, §§ 178,
200–201 ; Kerr on Fraud and Mistake, 177–181 ; *Andrews v.
Jones*, 10 Ala. 400.

It is insisted that the defendants, Moses Brothers, in whose
favor the judgment in controversy was rendered, can reap no
benefit from it, because it was procured through the influence
of Micou, acting upon the daughter through the pressure of
their fiduciary relations, which were known to defendants, and
that *the failure of Micou to disclose to her the nature and de-
tails of the indebtedness was a fraud for which the defendants
were responsible*.

The exact relation of Micou and his daughter, the complain-
ant, in these various transactions, in its legal aspect, is a matter
of controversy.    The theory of complainant's whole bill is that
it was a mere agency, she being the principal, and conducting
the entire farming operations, for her own benefit, through her
father as her agent.    The proof, in our judgment, fails entirely
to sustain this view.    It shows very clearly that Micou was the

chief, if not sole beneficiary of his own transactions. His assumed agency was entirely nominal, presenting only the outward form and appearance of reality. Its obvious purpose was to protect him and the fruits of his planting operations from the pursuit of creditors. He was in a state of ruinous insolvency, and this purpose of the pretended agency is not only transparent throughout the entire evidence, but was manifestly known to the complainant herself, as disclosed in her own testimony. While for this reason the farming operations were ostensibly conducted in Micou's name as agent, the clear design of both himself and complainant was that she would *lend him the aid of her credit*, which seems to have been good, but a secret trust of the profits was reserved for his benefit, for the general support of the family, of which complainant was a member.

It is not denied that every item constituting the judgment debt was a valid claim against Micou, who admits it to have been a debt of just and honorable obligation. It is asserted, however, that more than half of the amount was incurred by him in farming operations carried on otherwise than in his capacity as "agent," which is shown to be true, and that this fact was unknown to complainant, either at the time she assumed to pay it, by executing her various obligations, or at the time she confessed the judgment. This is, in our opinion, entirely immaterial so far as the defendants, Moses Brothers, are concerned. As to them, it was a mere obligation on complainant's part to stand as security for a claim due by her father, which, in the first instance, was thought by all parties concerned to have been amply secured by mortgage liens upon large crops which he contemplated raising. Though an absolute liability in form, it was in practical effect only conditional. The specific amount of the debt, too, was designated, so that she was aware of the exact liability. Though in form it was her debt, purporting to have been incurred by him as agent, it was really his debt for the extension of which she had loaned him her credit.

We are unable to see that Micou's conduct towards his daughter was characterized by any wrongful intentions. He evidently did not expect at first even to financially involve her, but was sanguine of reaping large profits from his enterprises. Nor is he shown to have used any solicitation or undue powers of persuasion to induce her co-operation in these enterprises. The law exacted of him, however, in view of his relations of confidence, the utmost good faith. It was not enough for him not to misrepresent, but he should have made a disclosure of every material fact, in his dealings with complainant, which would probably have affected the volition of any other adversary contracting party, dealing with him under circumstances

freed from the bias of fiduciary influences.—1 Perry on Trusts, § 178. It was his unquestionable duty to have informed her fully of the nature of the debt for which he secured her several written obligations.

It becomes important to inquire how far the defendants are chargeable with liability for this breach of legal duty on the part of Micou, which may have operated *prima facie* to render him a trustee, holding any of the fruits of his enterprise for the reimbursement of complainant *as between themselves.* They are shown to have acted towards Micou, not only with the utmost fairness and good faith, but also with the most liberal indulgence. They knew that he had been the guardian of complainant, and that she was living with him in the same household as his daughter. They also knew that the relation of guardian and ward had ceased three or four years previous, that complainant had procured the removal of the disabilities of non-age by decree of the chancellor, that she has since attained her majority, and purported to have the full control and management of her property. It could not be considered unreasonable for them to indulge the belief that, under these circumstances, a sufficient time had elapsed for the complainant to have become measurably emancipated from all undue influences of the privious relationship, so that it would be highly meritorious and honorable for her to aid him in the support of his family, when no other resource appears to have been left him.—*Hylton v. Hylton,* 2 Ves. 547; 1 Perry on Trusts, § 200. So, with a knowledge of the relation of parent and child existing between complainant and Micou, which must be admitted to be one of confidence, and often of controlling influence. Yet contracts between persons occupying this position can not be said, for this reason merely, to be *prima facie* void, without some affirmative proof of undue influence. The law recognizes the parental influence as a rightful and proper one, and it can not be presumed, in the first instance, that "a parent would make use of his authority and parental powers to coerce, deceive or defraud his child."—1 Perry on Trusts, § 201; *Jenkins v. Rye,* 12 Pet. 253. Hence, it has been adjudged, that the mere fact of a daughter, soon after coming of age, voluntarily giving securities to a creditor of her father in payment of his debts, is not of itself sufficient ground for imputing undue influence to the father.—*Thomber v. Sheard,* 12 Beav. 589.

The defendants are shown to have had great confidence in the honesty and good faith of Micou, and seem never to have doubted the integrity of his purposes towards them until some four or five years after the commencement of their dealings with him, and several years after the creation of the judgment debt in controversy. He had been clothed by the complainant

with the power of using her credit in his farming transactions.
She had repeatedly signed, in her own person, the various notes,
bills of exchange, mortgages and other securities relating to this
business.   These papers contain numberless recitals sufficient
to have excited her inquiry as to the nature of at least some of
her obligations.   The defendants were personally unacquainted
with complainant, and had all their dealings with Micou, who
was intrusted with the entire authority of management.   They
rendered to him full and accurate statements of the accounts be-
tween them from time to time, including the various items to
which objection is taken.   These accounts they had every reason
to expect that Micou would exhibit to her, and in fact that he
had done so, in as much as she repeatedly executed her written
obligations for the balances shown against her, which were re-
turned by Micou, as her reputed agent, to the hands of the de-
fendants.   The complainant can not be heard to assert, under
these circumstances, that notice to Micou, acquired by him
through the very medium of this assumed agency, was not
notice to her.   It is a general principle of equity, that "wher-
ever one of two innocent parties must suffer by the acts of a
third, he who has enabled the third party to occasion the loss
must sustain it."—*Taylor v. Great Indian &c. Co.*, 4 D. & J.
594; *Allen v. Maury*, 66 Ala. 10.

We place no great stress upon the fact that the judgment
sought to be vacated was one obtained by *confession*.   This
confession was obtained on a written power of attorney signed
by complainant, and directed to her own counsel.   It specified
the exact amount for which it was to be taken, which was evi-
denced by complainant's promissory note, secured by mortgage,
and upon this written evidence of indebtedness a regular suit
had been instituted, and would have authorized a judgment by
default in favor of the payees had there been no defense. . The
putting of the claim in judgment was an act of ordinary pru-
dence under the peculiar circumstances, and in it we discern
nothing pregnant with suspicion of unfairness or disbelief of
its validity on the part of the claimants.

It is very clear to our mind, that the evidence in this case
fails to show that there was any fraud whatever on the part of
Moses Brothers in procuring or obtaining the judgment, nor
does their knowledge of the particular facts of which they are
shown to be informed impute to them constructively any actual
or positive fraud, such as would authorize the vacating of the
judgment.   They are entirely guiltless, throughout their whole
dealings, so far as we can see, of any art, contrivance or device
by which an unconscionable advantage has been sought to be
gained by any one.   Nor are they chargeable with any com-
plicity in the alleged fraud of Micou, in concealing the nature

[Noble v. Moses Brothers.]

and character of the debt in controversy from the complainant. *Moog v. Strang*, 69 Ala. 98; *Holt v. Agnew*, 67 Ala. 360.   We are equally clear in the conviction that, if the complainant had any meritorious defense in the action at law, she was prevented from making it by her own negligence, and not because of accident, or the fraud, or other act of the plaintiff in the judgment.

We are not disposed to disturb the conclusions of the chancellor as to the credit of five thousand dollars ordered to be allowed on the judgment in taking the account.   This amount, which was received from Lehman, Durr & Co., appears sufficiently to have been intended as an unconditional credit, and not dependent on a mere executory agreement to constitute it a payment.

The instruction of the chancellor as to the matter of usury, however, we deem to be erroneous.   The statute not only provides that usurious contracts "shall not be enforced, except as to the principal," but further prescribes that "if *any interest has been paid*, the same must be deducted from the principal, and judgment rendered for the balance only."—Code, 1876, § 2092. This statutory provision does not, of course, forbid the exaction by a court of equity of lawful interest, as a condition precedent to the granting of relief to any complainant invoking its jurisdiction.   Nor does it authorize the recovery of usurious interest as to contracts entirely executed by the full payment of principal and interest.   But, where any portion of a debt remains unpaid, this balance may be abated by deducting from it the usurious interest.   So, if such *balance*, remaining over from an old usurious transaction, is carried forward and incorporated as a portion of the consideration of a new obligation, the superadded part of which is free from the taint of usury, the question of usury may be investigated *as to such balance*, which is alone affected by it, without imparting any taint to the superadded debt.   It is manifest, and has often been decided, that the legal effect of the statute is to render such contracts voidable merely, and not void.—*Bradford v. Daniel*, 65 Ala. 133.

No inquiry can, of course, be made as any usurious interest which was included in the note of the complainant which was reduced to judgment.   As to that transaction, the defense must be considered as waived, and such inquiry as precluded.   The credit of five thousand dollars, however, which it is held that complainant was entitled to have entered on the judgment, will authorize a corresponding abatement of the credits on her other indebtedness, and therefore will result in an increase of such indebtedness in precisely the same amount.

The decree of the chancellor is reversed, and the cause remanded, that further proceedings may be had, on reference to the register, in accordance with the foregoing opinion.