# Moses Bros. *v.* Noble's Adm'r.

*Bill in Equity to open Judgment, and for Account and Redemption under Mortgage.*

1. *Transactions between father and daughter, and in her name with third persons; equitable relief against.*—On re-examination of the record in this case, the majority of the court adhere to the decision rendered on the former appeal (81 Ala. 530-49), holding that the complainant and her father, with whom she continued to reside after attaining her majority, occupied a fiduciary relation towards each other, which affected their business transactions; that pecuniary obligations assumed by the daughter, for the benefit of the father and his family, would not be sustained in equity, unless the presumption of undue influence was rebutted, and it was shown that the daughter acted with full knowledge of the facts, having independent legal advice; and that the other defendants, who, having knowledge of the facts, advanced money to the father on the credit of the daughter, to conduct planting operations through a series of years, taking her note and mortgage and a judgment by confession for the balance due on accounts rendered, occupied no higher or better position than the father.

2. *Same; extent of relief.*—The complainant not assailing the validity of the original arrangement, under which the advances were made in her name, and on her credit, through her father as her agent, and not denying her liability for all items of indebtedness falling within the terms of the agreement, but seeking to eliminate charges for usurious interest, the father's indebtedness on prior account, and other charges

86　407
93　594
86　407
102　220
86　407
132　145

wrongfully included in the mortgage and judgment; the relief granted will be limited to the items particularly complained of, as under a bill to surcharge and falsify an account; one of the items eliminated being a deficiency of $5,000 on account of advances made to the father on a crop raised on a plantation not included in the agreement, she should be charged with the proceeds of any part of that crop which enured in any way to her advantage; and general payments on account by the father, without directions for specific application, should be applied on equitable principles to the charges in the order of time, without reference to the fact that one item may be better secured than another.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 2d January, 1882, by Mrs. Lucy B. Noble, wife of Edward F. Noble and daughter of B. H. Micou, against Moses Brothers, a partnership doing business in the city of Montgomery; and sought equitable relief, on allegations of fraud, undue influence, and usury, against a judgment for $13,035.53, which the complainant had confessed in favor of the defendants, in the City Court of Montgomery, on the 13th March, 1877; also, for an account of the various transactions between the parties, both before and after the rendition of the judgment, and for redemption under a mortgage, which she had executed to secure an indebtedness growing out of the same transactions. This is the third appeal in the case.—74 Ala. 604-21; 81 Ala. 530-49. The opinion states the material facts of the case as now presented, and the other facts are stated in the former reports.

TROY, TOMPKINS & LONDON, for appellant.

GUNTER & BLAKEY, and WATTS & SON, contra.

CLOPTON, J.—On the former appeal (81 Ala. 530) it was held, that the transactions mentioned in the bill, being between complainant's intestate, who was then unmarried, and her father, with whom she resided as a member of his family, are regarded as transactions between persons occupying a fiduciary relation to each other, and that pecuniary obligations assumed by her, for his benefit, will not be sustained, unless the presumption of undue influence is rebutted. Also, that the defendants, who advanced money to the father on the daughter's credit, with knowledge of the facts, occupy no higher or better position than the father; and it not being shown that she acted with full knowledge of the material facts, or on independent legal advice, complainant

was entitled to relief. Because of the resultant hardship and the importance of the question, the case was carefully and maturely considered by each member of the court. On re-examination of the record, the majority find no reason to justify a departure from the conclusion then reached.

The other questions presented for consideration arise on the decretal order of reference made after the remandment of the cause, and relate to the nature and extent of the relief to which complainant is entitled on the pleadings and proof. The transactions mentioned extended through the years 1875 to 1879, inclusive, but a separate and distinct arrangement was made at the beginning of each year. The dealings originated in an agreement made March 3, 1875, between Mrs. Noble, complainant's intestate, then Miss Micou, and Moses Bros., by which she assumed liability for certain advances to be furnished by them to enable her to carry on certain planting operations; also, advances for the support of her father, B. H. Micou, and his family, during the time of his attention to the business, and to pay necessary taxes and expenses, the advances not to exceed five hundred dollars per month. At the close of the year 1875, a settlement of the accounts for that year was made, and a balance of thirteen thousand four hundred and sixty dollars ascertained to be due Moses Bros., for which Miss Micou executed, February 7, 1876, her note and a mortgage on real and personal property; and in March, 1877, a judgment was rendered against her on this note.

When this case was last before us, it was declared that the judgment should be annulled and set aside, the effect of which is to remit the parties to the note and mortgage. The bill, which was filed by complainant's intestate in her lifetime, concedes her liability for all advances falling within the terms of her agreement, and does not controvert the correctness of the items. Its main object is to eliminate from the debit side of the account of 1875 certain alleged erroneous charges, and the usurious interest charged on the advances, the liability for which is admitted, and which entered into the note. In respect to the judgment, the special prayer of the bill is, not that it be annulled *in toto*, but opened for the purpose of allowing all credits to which she is justly entitled; and it contains an offer to pay whatever amount may be found to be due on an accounting.

The bill does not allege any intentional fraud, or undue advantage, on the part of Moses Bros.; and none is proved,

[Moses Bros. v. Noble's Adm'r.]

which infects the items of advances coming within the terms of the agreement of March 3, 1875. In the absence of allegation or proof of fraud, or undue advantage, which taints the entire account, the court will not open and unravel as if no accounting had been made. If a fiduciary relation exists between the parties, the transaction will be more jealously scrutinized, and the account opened on less proof, than when between parties who sustain to each other no relation of trust or confidence; but, in such case, the entire account must be so infected with fraud, or undue influence, that it would be inequitable to permit it to stand, even in part. When only errors or mistakes are alleged and proved—wrong charges which should be deducted, or omissions of credit which should be allowed—the court will give the party complaining permission to surcharge and falsify the account, and limit its authority to a correction of the errors or mistakes; for this accomplishes the ends of equity.—*Cowan v. Jones*, 27 Ala. 317; *Paulling v. Creagh*, 54 Ala. 646.

It is evident from the frame and prayer of the bill, that its chief purpose is to surcharge and falsify the account. It was so regarded on the former appeal, and on this theory the relief and extent of relief in regard to the account of 1875, and the note and mortgage of February 7th, 1876, was declared, as follows: "We have declared above that Miss Micou, then Mrs. Noble, did not and does not by her bill claim or pray to be relieved of the entire liability incurred by her agreement of March 3, 1875, and by her mortgage of February 7, 1876. The purpose was to eliminate from the account the balance of two thousand dollars brought from the account of 1874, and charged to her at the beginning of 1875, with its interest. Also, the balance of Boykin's account for advances made for the Shorter place for 1875, charged to Miss Micou at the close of that year. Also, all items of the account from the beginning, which are not provided for in the agreement of March 3, 1875; and all interest and charges on moneys and other things advanced, loaned, or forborne, over and above eight per cent. *per annum*. To this extent she is clearly entitled to relief, with this qualification." The qualification referred to will be hereafter mentioned. According to the principles of the opinion, permission is granted to complainant to surcharge and falsify the account, and on him rests the *onus* to show the erroneous charges complained of.

The qualification to the extent of the relief is, that, if any

[Moses Bros. v. Noble's Adm'r ]

part of the crop grown on the Shorter place in 1875 went to Miss Micou's credit with Moses Bros., or to her advantage in the continued cultivation of the plantations after that time, the credit of five thousand and twelve dollars, deficit of the Boykin crop, must be reduced to that extent. The decretal order of reference so directs; but it further orders that, if B. H. Micou drew and used money for his own purposes, which was charged to complainant's intestate, and his own money, not exceeding the amount so used, was received by Moses Bros., and, by direction or consent of B. H. Micou, was placed to the credit of complainant's intestate, such credit will be regarded as a re-payment to her *pro tanto*, and will be to that extent a proper credit. In determining the equity of Miss Micou to such credit, the true relation which existed between herself and father is an important and controlling factor. The theory of the bill is, that he acted as her agent; but the evidence clearly shows that the arrangement was to conduct the farming operations in her name, because of her father's insolvency—to loan him her credit—and that they were so conducted for his benefit. Personal property was transferred to her, not to become her property, but to enable her to mortgage it to obtain advances for her father's benefit. The true relation, as between themselves, was that of principal and surety. B. H. Micou was the primary debtor, and the crops grown on the plantations were, in legal contemplation, his property. Her equity is no other or higher than the equity of a surety similarly circumstanced. This was the view taken of the relation on the first, and conceded on the second appeal.—74 Ala. 604. The advances made to B. H. Micou, and used for his individual purposes, were charged to Miss Micou, the entire account for all advances being kept in her name, and all payments made were credited on general account. There is no evidence that B. H. Micou directed that any payments should be applied to any particular items or part of the account. The appropriation of payments, therefore, should be made on equitable principles. Complainant's intestate denies her liability for advances drawn by B. H. Micou, and used for his individual purposes, other than the support of his family. Her equity is to have all payments made with the personal property covered by her mortgage of March 3; 1875, and with her private means, applied in discharge of her just liability. If the charges of such advances are eliminated from the account, and complainant's intestate receives credit therefor on

the note of February 7, 1876, there remains no debt due her
by B. H. Micou, on account of moneys drawn and used for
his individual purposes, not contemplated by her agreement,
to which such payments can be applied as a repayment; and
she should not be allowed a credit on the account for pay-
ments made by her father with funds other than her private
funds, or the crops grown on the plantations cultivated in
her name, or the other property covered by the mortgage, in
the absence of special appropriation by B. H. Micou, or by
Moses Bros. Under the circumstances, the general rule
should be applied, that when a general payment is made on
a running account, in the absence of application by the par-
ties, and of other circumstances showing a different inten-
tion, it will be applied to the charges in the order of time in
which they accrued, without reference to the fact that one
item may be better secured than another.—*Harrison v. John-
ston*, 27 Ala. 445.

The bill prays that an account be stated between complain-
ant's intestate and Moses Bros., of all dealings between them
since the execution of the note and mortgage of February
7, 1876. On the same day on which the note and mortgage
were made, complainant's intestate executed an obligation
for the sum of forty-five hundred dollars, for advances to
make a crop during the year 1876, and a mortgage on real
and personal property to secure the same. Advances were
made to a large amount during the year, and charged to her.
The account was closed and balanced at the end of the year,
and defendants assert no claim against complainant's intes-
tate on account of the advances. At the beginning of each
of the years 1877, 1878, obligations of a similar kind, though
differing in amounts, and similar mortgages, were executed.
The accounts for these two years were settled, March 20,
1879, by agreement, by which Moses Bros. released com-
plainant's intestate from all liabilities therefor, except for
the advances made in 1879 up to the date of the agreement,
being about six hundred and fifty-four dollars, which sum
was carried to a new account, and accepted, in satisfaction of
the balance, B. H. Micou's individual note for thirty-six
hundred and twenty dollars. Miss Micou agreed to guaran-
tee the interest on the note, and to pay the premiums on the
life-insurance of her father, for the benefit of Moses Bros.
There are general allegations in the bill, that improper
charges were made, and usurious interest was charged in
these several accounts; but the bill does not aver otherwise

[Beadle v. Steele.]

any specific erroneous charges, nor that Miss Micou paid any part of the account of either of the years 1876, 1877, 1878, other than with the proceeds of the crops grown on the plantations cultivated in her name for the benefit of her father. Her right to relief does not extend beyond discharge from pecuniary obligations which bind her personally, or are charged on her property. From the averments of the bill, we infer that the claim is, if, when the usurious interest and other improper charges are eliminated from the accounts, the payments made exceed the balance due, complainant's intestate is entitled to have the excess appropriated to the payment of her note of February 7, 1876; and for this purpose she prays that the accounts may be opened and re-examined.

The same observations which we have made in respect to payments by B. H. Micou with his own funds apply to this claim. Such appropriation of the excess of payments over the amount properly chargeable to complainant's intestate, would be to divert from a just debt, owing by B. H. Micou, payments made by him with funds which, as between him and complainant's intestate, were his own, and to allow her to recover it from the creditors, on whose debt he made the payments. Release from all liability is the full extent of the relief to which complainant is entitled; and this being accomplished, improper charges, and usurious interest included in the accounts, work no injury to her. Opening and restating the accounts will not accomplish any equitable results.

The defendants concede that complainant's intestate is entitled to a statement of the account of 1879, of which the balance of six hundred and fifty-four dollars mentioned above constitutes a part.

The decree is reversed, and a decree will be here rendered in accordance with the principles of this opinion.