93  593
97  545

# Moses Bros. *v.* Noble's Adm'r.

*Bill in Equity to open Judgment, and for Account and Redemption under Mortgage.*

1. *Statement of account for advances, under bill to surcharge and falsify.*—Complainant, an unmarried daughter who had just attained her majority, became bound as surety for her insolvent father, for advances to be made by defendants to enable him to cultivate his plantation and support his family. At the end of the year, a deficit after appropriating the crops being reported, she gave her note and a mortgage on her property to secure the payment of such balance and of advances for the next year; and at the end of the second year, a greater balance against her being reported, she confessed a judgment for that amount. The arrangement was continued for several years, but the crops of each year paid the advances made. Complainant then filed her bill for relief against the judgment and mortgage, in the nature of a bill to surcharge and falsify, alleging that her father,

[Moses Bros. v. Noble's Adm'r.]

while acting nominally as her agent in all the transactions, with the knowledge and connivance of the defendants, had her charged at the end of the first year with an item of $5,000, on account of the deficit in the crops of another plantation which he cultivated, but which was not included in her contract with defendants, and that defendants had charged her with usury, &c.; and she prayed relief as to these items. *Held*, that while complainant was entitled to relief against the item of $5,000, as being improperly charged against her, this amount could not be reduced, at the instance of the defendants, to the extent of $200, proceeds of crop of oats raised on said plantation, which were received by them and included in advances made to plaintiff the next year, unless the accounts of that year were re-stated. *Held*, also, that a provision in the contract limiting the advances to $500 per month, being evidently intended for the benefit of the defendants, and not being invoked by the complainant in her bill, could not be invoked by her administrator, on a re-statement of the account, in avoidance of liability for any excess of advances above $500 per month. *Held, also*, that an item for $35, for tuition of her father's minor son paid by defendants, was properly charged against complainant as "advances of money for family support.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 2d January, 1882, by Mrs. Lucy B. Noble, wife of Edward F. Noble and daughter of Ben. H. Micou, against Moses Brothers, a partnership engaged in business in Montgomery, and on complainant's death pending the suit, it was revived in the name of her administrator. The bill sought equitable relief, on allegations of undue influence, fraud, usury, &c., against a judgment for over $13,000, which the complainant had confessed in favor of the defendants, in the City Court of Montgomery, on the 13th March, 1877; and also sought an account of the various transactions between the parties, both before and after the rendition of the judgment, and for redemption under a mortgage which she had executed to secure an indebtedness growing out of the same transactions. The material facts, as presented on the former appeals, are stated in the former reports.—74 Ala. 604; 81 Ala. 530; 86 Ala. 407. On the statement of the account after the reversal on the last appeal, each party reserved exceptions to the rulings of the register, and each party appeals from the chancellor's decree on these matters.

TOMPKINS & TROY, for Moses Brothers.

W. A. GUNTER, for complainant.

McCLELLAN, J.—This is the fourth appeal in this case. The opinions of the court on the two last appeals (81 Ala. 530, and 86 Ala. 407), taking a different view from that entertained when the case was first here (74 Ala. 604), established

the right of complainant's intestate to relief, and substantially settled the principles which should obtain in measuring and administering the relief appropriate to the facts averred and proved. The controlling principle thus established was that which impressed upon Lucy B. Micou, complainant's intestate, the *status*, clothed her with the rights, and fixed upon her the liabilities, of a surety to her father, B. H. Micou, in the dealings between them, on the one hand, and Moses Bros. on the other, covering the years from 1875 to 1879, both inclusive. On this basis, the accounts for the years 1876, 1877 and 1878 were decreed by this court, on the last appeal, to be entirely closed and settled. On that basis, the accounts of 1889 have since then been eliminated from the controversy by agreement of parties. We see no reason to disturb the results which have been thus attained, except in one particular.

When the case was before the court on the second appeal—81 Ala. 530—the claim and complaint of complainant were not alone that the two items of $2,000 and $5,012 were improperly charged against her, and included in her note of February 7, 1876. It was complained, also, that she had been charged usurious interest and excessive commissions, together with other improper charges. And these irregular and illegal dealings, it was charged, had pervaded the entire transaction during the entire term of five years, covered by the dealings of the parties. Considering the litigation as in effect bringing before the court one continuous transaction, the attention of the court does not appear to have been directed to the assigning of particular items to any particular year of the account. Hence, in the opinion delivered on that appeal, after declaring that complainant had been improperly debited with the two items of $2,000 and $5,012, with interest, and with certain other charges "from the beginning," which were declared to be illegal, the following language was employed: "There is some testimony that some part of the product of the crops grown on the Shorter place in 1875 went to Miss Micou's credit with Moses Brothers, or to her advantage, in the continued cultivation of the plantation after that time. If such was the case, the credit of $5,012, deficit of the Boykin crop, must be reduced to that extent." On the third appeal, 86 Ala. 407, the same principle was re-asserted.

Pursuing the letter of these opinions, the register, in stating the account which is before us on this appeal, did deduct from the credits certain sums, and among them several hundred dollars, the proceeds of the oats grown on the Shorter place in 1875, which he found had gone in 1876 to the use of Miss Micou, in cultivating the said plantations. This part of the

[Moses Bros. v. Noble's Adm'r.]

finding and report was excepted to in the court below, the exception overruled, and rulings assigned as error in this court.

If the account, commencing in the Spring of 1875, and running through several years, had been reported on by the register as one continuous transaction, it would seem that the only injury done Miss Micou by charging her with the proceeds of the oats as a deduction from the amount of the Shorter place deficit, which the court had ordered to be stricken from her accounts, would have been the item of interest, if any was allowed. The account, however, was not stated as a continuous transaction.

In stating the account, after the last appeal to this court, only the items constituting the account of 1875, and extending up to the giving of the note, February 7, 1876, were considered, and surcharged and falsified. Under the judgments of this court, as then rendered, it was conceded by counsel that the products of the plantations in 1876 and other late years had paid to Moses Bros. all they had charged against Miss Micou, for advances for several years, and the accounts of those years were not reported. Thus stating the account, and confining it to the dealings of 1875, the charge for the proceeds of the oats used by Miss Micou, or on the plantations cultivated in her name, was improper; and such items should not have been deducted from the $5,012 ordered to be stricken from her account for 1875.

The oats were placed with merchants to be sold, and the proceeds were at the disposal of Moses Brothers. They had a lien on them to the extent of $5,012, Micou's deficit on the Shorter place for 1875. The money when received for the oats belonged to Moses Bros., but was a credit or partial payment on the B. H. Micou deficit of $5,012. It was not rightfully a credit to Miss Micou in 1876, or on any other account she owed. It was simply so much money advanced by Moses Bros.

So, in stating the account for 1876 under this modified decree, should such statement be attempted, Miss Micou will be chargeable with all proper advances made by or through Moses Bros., whether such advances were paid for with the proceeds of the oats, or with any moneys furnished by them. And she will be entitled to no credits for the proceeds of the oats, for the obvious reason that, being in effect the property of Moses Bros. to the extent of $5,012, their only proper place is as a credit on that individual liability of B. H. Micou.

In the event the account of 1876 is considered and reported on, and in the further event it be shown that any of the oats

from the Shorter place grown in 1875 were used in making the crop of 1876, then this item, to the extent of her contract liability, will become a proper debit against Miss Micou, as, in effect, so much advanced by Moses Bros.; but in no event is the entire charge for the oats and their proceeds, so used for her benefit, to exceed $5,012, the extent of Moses Bros.' lien on them.

It results from what we have said that the account of that year, if desired, may be re-opened, and charged with the value of such of the Shorter place supplies as Moses Bros. had a lien on to secure the Boykin debt, and not in excess of the sum actually due on the debt at the time of the advancement. If, with this addition, the liability of Miss Micou for 1876 for advances covered by the terms of her engagement overbalances the payments made thereon, the difference will be decreed to Moses Bros., and carried back to reduce any balance that may be found against them on the dealings of 1875. And if, on the other hand, the payments for 1876 are greater than Miss Micou's liability, increased by this addition to it, such balance will enure to her credit and benefit on the account of 1875. This, because the mortgage of February 7, 1876, secures not only legitimate advances to be made for the year 1876, but goes further, and secures "any indebtedness that may be due" Moses Bros. The crops of 1876 were mortgaged to pay whatever Miss Micou owed on the operations of 1875, as well as the liability she might incur in the year 1876; and the crops of the latter year are equally pledged to each liability. Her right to have them thus applied can not be taken from her without her consent.

The account for other years than 1875 may, if desired, be opened; and this conclusion leaves for our consideration the dealings of the year 1875.

The bill of complaint is not one to avoid liability *in toto* on the obligations entered into by complainant's intestate to Moses Bros. Its sole purpose is to surcharge and falsify their account against her, and, as an incident to this end, it is sought to impeach the note and mortgage by which the account was closed, and the judgment for the amount so admitted to be due and agreed to be secured and paid. It was entirely competent for the original complainant, though under the disability of coverture at the time of her filing the bill, to carve out the relief for which she prayed, and by her pleadings confess herself bound in matters, and to an extent from, which she might have had relief upon appropriate averment supported by proof. It was at her election whether she would ask to be relieved from all liability, or from all liability in excess of the

amount per month limited in her contract of suretyship, or from all liability for the value of articles furnished under that contract and which were not embraced in its terms. The case made by the bill is not one for general relief from liability, nor is it one to confine complainant's liability to five hundred dollars per month for the year 1875, but it is to limit her liability to the things for which she agreed to be bound irrespective of the value of those things, and hence irrespective of the inquiry as to whether that value exceeded five hundred dollars per month, or six thousand dollars for the year 1875. There is but one reference in the bill to the five hundred dollar limitation of the contract, and this reference presents that stipulation as being proposed by Moses Bros., and for their benefit, which it might well have been, in view of the fact that the security for which they contracted was uncertain in character and value, consisting of crops to be made, and certain personal property which might or might not insure the payment of more than six thousand dollars; and in view of the further fact, on the face of the transaction, Miss Micou standing in the attitude of a principal debtor, no reason is discernible for such a limitation being inserted for her benefit. Not one fact is alleged in the bill as a predicate for confining complainant's liability to five hundred dollars per month, or indicating any purpose to rely upon that limitation. On the contrary, the whole purpose of the bill, as to the year 1875, manifestly was to eliminate from the account all items of charge which were not crop advances, or family supplies, within the terms of the mortgage of March 3, 1875. The whole objection, as we understand the averments of the bill, has been to the *character* of the items of debit, and not to the amount of the claim, except as affected by improper items, and we find nothing in former opinions of this court, or in former decrees of the court below, inconsistent with this interpretation. The complainant is bound by the allegations of the bill. His intestate thereby committed herself to payment for all items of the character provided for in her contract, without reference to the amount thereof, and he can not now avoid the effect of this state of the pleadings, and invoke the limitation which has been effectually waived, even if it could, under the peculiar facts of this case, have been relied on in the first instance. The chancellor erred, therefore, in limiting the claim of Moses Bros. for 1875 to six thousand dollars, irrespective of the character of the items of debit.—*Sanford v. Ochtalomi*, 23 Ala. 669; *Spoor v. Phillips*, 27 Ala. 193; *Park v. Lide*, 90 Ala. 246.

The only item which, in our opinion, was erroneously

stricken from the account of Moses Bros. for 1875, was that of $35.50, for tuition paid to Thomas. This, we think, is well within the stipulation for "advances of money for family support," contained in Miss Micou's contract of suretyship.

The decree is reversed on each appeal, and it is here ordered and decreed, as of the date of the submission of this cause, that the register of the Chancery Court take and state an account between the parties in accordance with this opinion, and report his action under this reference to the next term of said Chancery Court; and for further proceedings in that behalf the case is remanded. Appellees will pay the costs of the respective appeals.

Reversed and remanded.